

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WILD EDIBLES, INC.,

               Plaintiffs,      :

       -against-                   :

BRANDWORKERS,                 :      **Docket No. 07 CV**
INTERNATIONAL and DANIEL GROSS,

                                          :

              Defendants.
-------------------------------------------------------X

## **MEMORANDUM OF LAW**

Meltzer, Lippe, Goldstein & Breitstone, LLP
Attorneys for Plaintiffs
190 Willis Avenue
Mineola, New York 11501
(516) 747-0300

## TABLE OF CONTENTS

|  | PAGE NO. |
|---|---|
| **PRELIMINARY STATEMENT**........................... | 1 |
| **STATEMENT OF FACT**................................ | 2 |
| **ARGUMENT** | |
| **THE DEFENANTS' ACTS CONSTITUTE A RESTRAINT OF TRADE AND INTENTIONAL INTERFERENCE WITH WILD'S ECONOMIC RELATIONS, JUSTIFYING THE REQUESTED PRELIMINARY INJUNCTION**........................... | 3 |
|     A.    **Defendants' Acts Violate the Antitrust Laws**..... | 3 |
|     B.    **Defendants' Intentionally Interfered With Wild's Economic Relations**..................... | 6 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WILD EDIBLES, INC.,
                Plaintiffs,     :

        -against-     :

BRANDWORKERS,     :    **Docket No. 07 CV**
INTERNATIONAL and DANIEL GROSS,
     :
                Defendants.
------------------------------------------------------X

## **MEMORANDUM OF LAW**

## **PRELIMINARY STATEMENT**

      Plaintiff, Wild Edibles, Inc. ("Wild") is entitled to a preliminary injunction, enjoining the Defendants, Brandworkers, International ("Brandworkers"), Daniel Gross ("Gross") and their agents from coercing customers of Wild to stop doing business with Wild. Wild has demonstrated in the moving papers that it will likely succeed in its claim that the Defendants, jointly and severally, unlawfully conspired to restrain Wild's trade and intentionally interfered in Wild's economic relationships. Further, Wild has demonstrated that the harm caused by the Defendants is harm to Wild's customer relationships and therefore irreparable. Finally, Wild has shown that the equities tip decidedly in its favor, as the Defendants have no actual stake in the outcome of the subject motion. Consequently, Wild has demonstrated its likelihood of success on the merits of its claims, the irreparable harm it currently suffers and the balancing of the equities in its favor, entitling Wild to the requested preliminary injunction, *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) *Polanco v. Levitt*, 2007 WL 2902961 (W.D.N.Y.)

The case at bar stems from the efforts of the Internation Workers of the World LU 460/640 ("IWW") to compel Wild to recognize it as the bargaining representative of its employees, regardless of the desires of Wild's employees. Instead of obtaining a "showing of interest" (via the signing of authorization cards by Wild employees) and petitioning the National Labor Relations Board ("NLRB") for an election, Brandworkers and the IWW seek to coerce Wild to recognize the IWW and negotiate with it. Brandworkers seeks to do so by, *inter alia,* coercing Wild's customers to stop doing business with Wild. The Defendants do not do this for their own competitive economic profit. Brandworkers is purportedly a non-profit entity, which appears to be an alter ego of IWW, sharing the same telephone number. Gross, an individual, is not, like Wild, a purveyor of fine fish and seafood products. Rather, the Defendants act out of a desire to harm Wild via the exertion of economic pressures in restraint of free trade.

In sum, the Defendants: (a) fully aware of the relationship between Wild and a restaurant known as Pastis (and its affiliated restaurants), to wit; supplier and purchaser; (b) sought to interfere with that relationship by picketing, holding press conference(s) and demonstration(s) in front of Pastis, **complaining about Wild, not Pastis** and asking consumers to refrain from patronizing Pastis (economic pressures); (c) without seeking any economic benefit for themselves, but rather solely in an attempt to injure Wild by depriving it of a substantial purchaser of its product; and (d) succeeded in injuring Wild by obtaining a purported contract from Pastis, in which Pastis agreed not to purchase product from Wild until certain employment litigation (pending before Judge Stanton) and certain NLRB charges are resolved.

Were Brandworkers a labor organization, then their actions would constitute a flagrant secondary boycott in violation of the National Labor Relations Act ("NLRA") and the NLRB could seek the instant injunction. Brandworkers seeks to avoid same, but instead the Defendants commit an unlawful restraint of trade and common law tort. Their actions should be enjoined and the purported contract they extorted from Pastis deemed a nullity.

## STATEMENT OF FACT

The salient facts have been set forth in the moving Affidavit of Richard Martin and are respectfully incorporated by reference herein.

## ARGUMENT

## THE DEFENDANTS' ACTS CONSTITUTE A RESTRAINT OF TRADE AND INTENTIONAL INTERFERENCE WITH WILD'S ECONOMIC RELATIONS, JUSTIFYING THE REQUESTED PRELIMINARY INJUNCTION

A.    **Defendants' Acts violate the Antitrust Laws**

It is well settled that coercing the elimination of market choices constitutes an antitrust violation. As stated by the United States Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters* 459 U.S. 519, *528, 103 S.Ct. 897, **903 (U.S.,1983):

> Coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions and may be condemned even without proof of its actual market effect. Cf. *Klors, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 210-214, 79 S.Ct. 705, 708-10, 3 L.Ed.2d 741 (1959).

The Defendants purported desire to improve working conditions for Wild's employees (regardless of how misguided) does not insulate them from liability for their antitrust actions. Even a true labor organizations antitrust exemption does not extend this far, *Id*:

> In this case, however, the Union was neither a consumer nor a competitor in the market in which trade was restrained. It is not clear whether the Union's interests would be served or disserved by enhanced competition in the market. As a general matter, a union's primary goal is to enhance the earnings and improve the working conditions of its membership; that goal is not necessarily served, and indeed may actually be harmed, by uninhibited competition among employers striving to reduce costs in order to obtain a competitive advantage over their rivals.

More specifically, once a labor organization joins with a non-labor organization to restrain competition, its exemption is forfeited and its liability can not be denied. As stated in *Allied Intern., Inc. v. International Longshoremen's Ass'n*, AFL-CIO 492 F.Supp. 334, *337 -338 (D.C.Mass., 1980) *Aff'd.* 640 F.2d 1368, *1380 (1st Cir. 1981):

> Unions may thus qualify for a "labor exemption" from the antitrust laws so long as they do not combine with non-labor groups and act in their "self-interest", despite an apparent common law restraint on competition.
>
> Both prongs of this standard have been further developed by the Supreme Court. Although a union's activities fall within the protection of the Clayton Act, it may be enjoined where it acts in combination with employers to restrict competition or control the product market. United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, supra.

In the case at bar, the conspiracy engineered by the Defendants to coerce Pastis is blatant and their written agreement dispositive of an issue usually left to far "grayer" evidence:

> Illegal conspiracies, of course, can rarely be proved through evidence of explicit agreement, but must generally be proved through inferences from the conduct of the alleged conspirators. See Michelman v. Clark-Schwebel Fiber Glass Corp., 534 F.2d 1036, 1043 (2d Cir.), cert. denied, 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976). It is clear, however, that "the circumstances (must be) such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." American Tobacco Co. v. United States, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946).

*Venture Technology, Inc. v. National Fuel Gas Co.* 685 F.2d 41, *45 (C.A.N.Y., 1982) *Cert Denied, Schwimmer v. Sony Corp. of America* 459 U.S. 1007, *1008, 103 S.Ct. 362, **363, 74 L.Ed.2d 398, 1982-83 Trade Cases P 65,022 (U.S.1982), *Rehearing Denied by Venture Technology Inc., v. National Fuel Gas Distribution Corporation*, 459 U.S. 1138, 103 S.Ct. 775, 74 L.Ed.2d 986 (U.S.N.Y. Jan 10, 1983) (NO. 82-362)   AND *Rehearing Denied by Schwimmer v. Sony Corp. of America*, 459 U.S. 1189, 103 S.Ct. 840, 74 L.Ed.2d 1032 (U.S.N.Y. Jan 24, 1983) (NO. 82-277).

As set forth above and in the moving Affidavit of Richard Martin, the Defendants have engaged in a blatant boycott of Wild's product, coercing Pastis to join in the conspiracy and flagrantly revealing their unlawful acts through the written agreement between Brandworkers, the IWW and Pastis. Such actions are unlawful. As set forth in *Bodine Produce, Inc. v. United Farm Workers Organizing Committee* 494 F.2d 541, *561 (9th Cir. 1974):

> Subparagraph D supplements this by alleging agreements, designed to implement the conspiracy pleaded in paragraph four, between the defendants and operators of retail stores throughout the United States to refrain from purchasing, handling or selling table grapes.
>
> These general allegations are sufficiently broad to embrace perhaps all, and at least part, of the activities not specifically alleged by the plaintiffs. Moreover, such activities cannot unreservedly be placed within the labor exemption to the Sherman Act. The issue thus becomes whether these allegations constitute compliance with Rule 8(a)(2). We hold that they do.

These types of boycotts are illegal both under the NLRA and the antitrust laws. As stated in *The Leff Dictionary Of Law: A Fragment* 94 Yale L.J. 1855, *2203 - 2204 (.1985):

> Boycotts are also important in labor law. While it has been established (though not without some struggle) that the refusal among workers in a union to work for a particular employer until he meets their demands is not itself violative of the antitrust laws, it is also generally the law that workers and unions may not take part in a "secondary boycott," i.e., employ economic weapons, especially picket lines, to coerce an employer with whom the union has no labor dispute to cease doing business with one with whom it does. Thus, e.g., it would be an unlawful secondary boycott (under § 8(b)(4)(ii)(B) of the NLRA) for the union representing an automobile manufacturer's workers to picket in front of an auto retailer's showroom.

Based upon the above, the Defendants flaunting of their violation of the Sherman and Clayton acts cannot be countenanced and should be immediately enjoined.

**B.    Defendants Intentionally Interfered With Wild's Economic Relations**

It is beyond dispute, considering the written agreement between Pastis, the IWW and Brandworkers, that: (a) a relationship existed between Pastis and Wild (to wit: purchaser and supplier); (b) the Defendants were fully aware of said relationship; (c) the Defendants set out to and intended to interfere with that relationship; and (d) the Defendants succeeded in injuring Wild via said interference. Consequently, Wild has established its *prima facie* case, *Wrenn v. New York City Health and Hospitals Corp.* 104 F.R.D. 553, *558 (S.D..N.Y.1985)

In fact, Wild has met far more than its pleading burden. Wild has met its burden of proof, sufficient to sustain a verdict against the Defendants. In order to do so, in addition to the above, Wild must establish that either the Defendants sole purpose for interfering was to harm Wild or that the means employed by the Defendants were unfair, improper or constituted an independent tort, *Schorr v. Guardian Life Insurance Company of America,* 2007 Slip Op 07331, decided October 2, 2007 (App. Div. 1st Dep't. 2007). As neither Gross nor Brandworkers are competitors of Wild, their purpose could only be to harm Wild. As the New York State Court of Appeals stated in *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.* 50 N.Y.2d 183, *190, 406 N.E.2d 445, **448-449, 428 N.Y.S.2d 628,**632 - 633 (N.Y., 1980):

> Although his status as a competitor does not protect the interferer from the consequences of his interference with an existing contract, it may excuse him from the consequences of interference with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful.

In the case at bar, the Defendants are not competitors, their intent is solely to harm Wild **AND** they have employed improper means to do so. Improper means have been defined as including both antitrust violations and economic pressures, however, any independent tort suffices. In Martin Ice Cream Co. v. Chipwich, Inc. 554 F.Supp. 933, *945 -946 (S.D.N.Y.1983) the Court specifically stated:

> The Court, however, cannot agree with the defendants, at least not to the extent that it finds that Martin has adequately pled and raised a question of fact concerning improper means of interference by the defendants. It is beyond dispute that a conspiracy to unreasonably restrain trade or to monopolize trade would constitute improper means. Thus, if Martin is able to prove the antitrust violations discussed earlier, it will also be able to prove improper means.

Similarly, the New York Court of Appeals in *Guardian Life, Supra,* stated, "Wrongful means" include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure;" *Accord, NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.* 87 N.Y.2d 614, *624, 664 N.E.2d 492, **497, 641 N.Y.S.2d 581, ***586 (N.Y.,1996)

In the case at bar, the Defendants, intending solely to harm Wild, engaged in civil suits (the FLSA Complaint currently pending and the additional threats of Gross in the ONNYTURF blog), antitrust violations and thereby exerted economic pressure in the nature of a secondary boycott. In sum, the Defendants have intentionally and tortiously interfered with Wild's economic relations and should be enjoined from continuing to do so. Similarly, the purported agreement between Brandworkers, the IWW and Pastis should be deemed a nullity.

Wherefore, it is respectfully requested that the Subject Motion be granted in its entirety and that the Plaintiff be awarded such other and further relief as this Court deems just and proper.

Dated:  Mineola, New York
        October 10, 2007

           Meltzer, Lippe, Goldstein & Breitstone, LLP

By _____
    Richard M. Howard (RMH-2932)
    Attorneys for Plaintiff
    190 Willis Avenue
    Mineola, New York 11501
    (516) 747-0300