UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WILD EDIBLES, INC.,
               Plaintiffs,        :

        -against-          :       **AFFIDAVIT**

BRANDWORKERS, INTERNATIONAL  :      **Docket No. 07 CV** 9225
and DANIEL GROSS,
              Defendants.    :
------------------------------------------------------X
STATE OF NEW YORK}
              S.S.
COUNTY OF NEW YORK}

      Richard Martin, being duly sworn, does hereby depose and say:

**Introduction**

1.      I am the president of Wild Edibles, Inc. ("Wild Edibles"). I make this Affidavit to explain to the Court the actions the Defendants have undertaken in an attempt to harm Wild Edibles. Wild Edibles is a wholesale and retail purveyor of fine fish and seafood serving the New York metropolitan market. Sales to restaurants account for the majority of Wild Edibles revenue.

2.      Since sometime in August, 2007 Wild Edibles has been subjected to the union organizing campaign tactics of the Industrial Workers of the World, LU 460/640. ("IWW").

3.      As part of this campaign, several Wild Edible employees claiming membership in the IWW filed a Summons and Complaint alleging violations of the Fair Labor Standards Act ("FLSA") by Wild Edibles, including a claim of retaliation. This case is pending before Judge Stanton of this Court. *See* the article in the Blog, *Metro,* attached hereto as Exhibit "A."

413798-1

4.      The Defendants have assisted the IWW in its campaign. For example Defendants have staged group demonstrations and press conferences at restaurants which purchase seafood from Wild Edibles with the stated purpose of forcing the restaurant to cease doing business with Wild Edibles.

5.      In early September, the Defendants threatened to engage in protest activity in front of the restaurant Pastis unless that restaurant ceased doing business with Wild Edibles, and then carried out its threat when the restaurant did not give in to their demands.

6.      On October 4 Defendants again threatened to engage in activity in front of Pastis unless that restaurant, and all its affiliated restaurants, stopped purchasing seafood from Wild Edibles. Having been subjected to Defendants' prior activity at the restaurant when he did not give in to Defendants' demands, this time the owner succumbed to the threats, acceding to Defendants' conditions.

7.      The terms of this "agreement" are contained in a document signed by both the IWW and Defendants. Simply put in order to avoid having its customers subjected to Defendants' harassing activities at its restaurant, the entire restaurant group cannot do business with the company of their choice, Wild Edibles.

8.      Under this Agreement Defendants will not release the restaurant group from this restriction and permit them to do business with Wild Edibles until the FLSA litigation and certain charges at the National Labor Relations Board ("NLRB") have been resolved.

413798-1

9.    Attached hereto as Exhibit "B" is the Summons and Complaint in this action, which will be served and filed simultaneously with the instant moving papers.

**Background**

10.    Brandworkers International ("Brandworkers") asserts that it is a new non-profit workers' rights group, working with the IWW. *See* Blog article in *Metro,* attached hereto as Exhibit "A."

11.    Defendant Daniel Gross is the "face" of Brandworkers and has publicly asserted that he will continue to attack Wild Edibles. In the Blog *ONNYTurf,* the following is stated:

> I asked Brandworkers International's Daniel Gross if we could expect more lawsuits coming from this campaign. Mr. Gross said, "We don't discuss legal actions before they happen, especially because of the retaliation." But, generally speaking, he did hint there would be more labor actions around this campaign: "I can say there will be more exciting things to come."

12.    Brandworkers does not claim to be a "labor organization" as defined by the National Labor Relations Act (the "Act"), in an apparent attempt to avoid any obligation to comply with the Act or potential liability for its violation, including money damages pursuant to Section 303 of the Labor Management Relations Act for violation of the "secondary boycott" provisions of Section 8(b) (4) (B) of the Act. They are, however, therefore subject to the antitrust laws and to the laws of tortious interference with economic relations.

**The Defendants' Tortious Acts**

13.    The Defendants have, in fact, successfully acted to harm Wild Edibles' business. They have done so by pressuring its customer Pastis and its

413798-1

affiliated restaurants to stop buying seafood from Wild Edibles. Were Defendants a labor organization, their actions would constitute an unlawful secondary boycott in violation of the Act.

14. Instead their actions are essentially a malicious act to harm Wild Edibles by interfering with its economic relations with its main customer base, and by restraining Wild Edibles' ability to continue to engage in commerce.

15. In sum, the Defendants have wrongfully coerced Pastis (and its affiliated restaurants) to refrain from doing business with Wild.Edibles for an unlawful purpose.

16. The Defendants' acts do not stem from competition with Wild Edibles or because the Defendants seek to do business with Pastis; rather, the Defendants simply seek to stop Pastis from doing business with Wild Edibles.

**The Proposed Remedy**

17. Unless the Defendants' acts are restrained immediately, Wild Edibles will have no remedy whatsoever.

18. Brandworkers is a non-profit organization with no apparent assets.

19. Furthermore, the damage will be to Wild Edibles customer relationships, which is, in and of itself, irreparable harm. In addition to Pastis other restaurants have expressed their concern about continuing to do business with Wild Edibles for fear of becoming the subject of activities by Defendants.

20. Consequently, the only appropriate remedy is two fold, as follows:

   A)    A declaration that the purported contract between Pastis and Brandworkers is null and void; and

413798-1

B)    A preliminary injunction mandating that the Defendants may not participate in any further attempts to stage demonstrations at Pastis or otherwise seek to coerce Pastis to cease doing business with Wild Edibles.

**Means of Service**

21.    The Brandworkers' web site is currently down and no address could be located for Brandworkers, other than New York, New York 11101.  Its facsimile number is, however listed with a web site known as "idealist.org."

22.    We therefore respectfully request that this Order to Show Cause and all supporting papers be served upon the Defendants at said facsimile number.

Wherefore, it is respectfully requested that the Subject Motion be granted in its entirety and that the Plaintiff be awarded such other and further relief as this Court deems just and proper.

Richard Martin

Sworn to before me
this __ day of October, 2007

_____
NOTARY PUBLIC

THOMAS J. BIANCO
Notary Public, State of New York
No. 4894771
Qualified in Queens County
Commission Expires April 20, 20__

413798-1

# Exhibit "A"

Editor's Note: Welcome!

advertisement



**Reward your thoughts!**
win iPods, theater tickets, gift cards, and much more.
www.metrollfepanel.com
metro life panel


NY BOS PHL

**news**
top stories
international
national
local
entertainment
sports

**metroblogs**
the word
sportsblog
going out
movies
my view

**etc.**
your turn
today's paper
archive

about metro
contact us
advertise
terms of service
privacy policy
careers

local

# Posh protest

### Food workers rally at Pastis

by amy zimmer / metro new york
SEP 18, 2007

> email this to a friend

MEATPACKING DISTRICT. The workers who filed a class action lawsuit yesterday against Wild Edibles, a high-end seafood retail and wholesale company, didn't hold their press conference at the company's Long Island City warehouse or one of its three retail locations. Instead, they stood in front of Pastis — Keith McNally's fashionable French restaurant.


(Photo: Aheron Rothschild/Metro)

Pastis, the workers say, is one of Wild Edibles' big customers. They allege Wild Edibles systematically denied overtime pay and, when workers tried to assert their rights, they faced retaliation.

Pedro Hernandez, who cleans and weighs fish and oversees oysters, has worked at the warehouse for nearly a year and earns $450 a week for the 56 hours he puts in.

"They make us work a lot, at least three hours above the eight-hour day," Henandez said through a translator. "We were told we would get a raise after three months, but that never happened."

Brandworkers International, a new nonprofit workers' rights group, along with Industrial Workers of the World IU460-640, organized yesterday's rally to raise awareness for their campaign to improve conditions for the low-wage jobs held mainly by immigrant workers at warehouses in Brooklyn and Queens.

Workers at 10 city food warehouses have joined the IWW. Four from Wild Edibles who tried to unionize with IU460-640 were fired, workers alleged.

Representatives from Wild Edibles and Pastis declined comment.

Daniel Gross, co-founder of Brandworkers, hoped passers-by got the message.

"Focus on the food chain," he said. "Consider what's on your plate. One step before that tuna hits it, workers at Wild Edibles and elsewhere are working in shameful and deplorable conditions."


tell us what you think
CLICK HERE

more from metro

**Too good to be true?**
OCT 12 metro

**Bids are in for West Side yards**
OCT 12 metro

**Guilty verdict in hate crime killing**
OCT 12 metro

**Cop killer convicted in Brooklyn**
OCT 12 metro

**Another message of hate**
OCT 12 metro

local archive

local from AP

**Spiritual leader Sri Chinmoy dies in NYC**
12 OCT 12:20 PM EDT (AP)

**LI karate instructor accused of sex abuse**
12 OCT 11:30 AM EDT (AP)

**Another billionaire eyeing mayor run when Bloomberg leaves office**
12 OCT 11:10 AM EDT (AP)

**Teen dies after Brooklyn shooting incident**
12 OCT 10:50 AM EDT (AP)

**NYPD seeks suspects in two noose incidents in one week**
12 OCT 10:40 AM EDT (AP)

**Westchester DA: Policeman fatally injured homeless man**
12 OCT 8:50 AM EDT (AP)

**Husband learned of wife's airport death 2 hours later: Records**
12 OCT 8:40 AM EDT (AP)

**Brazil urged to drop probe of crash involving LI pilots**
12 OCT 8:20 AM EDT (AP)

**NYPD: NYPD: Noose found near ground zero post office**
12 OCT 7:30 AM EDT (AP)

**Police to scrutinize security tapes in Columbia noose incident**
12 OCT 6:20 AM EDT (AP)

**Hotel Metro in NYC**
Photos, Customer Ratings & Reviews. Find Your Next Hotel
on Expedia!
www.Expedia.com/NYC

**Union Pension**
How can you be sure your unions pension is safe?
www.knowyourpension.org

**Seafood Restaurants**
Save time! Review our listings of local restaurants.
YellowBook.com

**Same Day Delivery NYC**
No delivery charges anywhere in Manhattan.
www.academyfloral.com

Ads by Google

© 2007 Metro. All Rights Reserved.

# Exhibit "B"

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____     District of     _____ New York _____

WILD EDIBLES, INC.

                    Plaintiff.          **SUMMONS IN A CIVIL ACTION**

              V.


BRANDWORKERS INTERNATIONAL, AND

DANIEL GROSS,                            CASE NUMBER:  07 CV

                    Defendants.


        TO: (Name and address of Defendant)


        NEW YORK, NEW YORK 11101

        917-591-6128 - facsimile


**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)
MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
190 WILLIS AVENUE,
MINEOLA, NEW YORK 11510
RICHARD M. HOWARD, ESQ.


an answer to the complaint which is served on you with this summons, within __thirty (30)__ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.


_____          _____
CLERK                                            DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL   $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                              Date                                *Signature of Server*

                                                  _____
                                                  *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

WILD EDIBLES, INC.

V.          Plaintiff.

**SUMMONS IN A CIVIL ACTION**

BRANDWORKERS INTERNATIONAL, AND

DANIEL GROSS,

Defendants.

CASE NUMBER:  07 CV

TO: (Name and address of Defendant)

c/o BRANWORKERS INTERNATIONAL
NEW YORK, NEW YORK 11101

917-591-6128 – facsimile

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
190 WILLIS AVENUE,
MINEOLA, NEW YORK 11510
RICHARD M. HOWARD, ESQ.

an answer to the complaint which is served on you with this summons, within ___thirty (30)___ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(By) DEPUTY CLERK

✎AO 440  (Rev. 8/01)  Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
    discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL  $0.00 |

### DECLARATION OF SERVER

      I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  _____   _____
                Date               *Signature of Server*

                         _____
                         *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
WILD EDIBLES, INC.,
                          Plaintiffs,            :

          -against-                              :          **COMPLAINT**

BRANDWORKERS, INTERNATIONAL   :          **Docket No. 07 CV**
and DANIEL GROSS,
                                                 :
                          Defendants.
-----------------------------------------------------X

    The Plaintiff, Wild Edibles, Inc. ("Wild"), by its attorneys, Meltzer, Lippe,

Goldstein & Breitstone, LLP, as and for its Complaint against Brandworkers,

International ("BW"), and Daniel Gross ("Gross"), sets forth the following:

### Parties, Jurisdiction and Venue

1.      Wild is a purveyor of fine fish and seafood products throughout the
metropolitan area, maintaining a principal office for the transaction of
business in New York County, New York.

2.      BW is, upon information and belief a fictitious name for a non-existant
entity. It is neither a corporation, limited liability company, partnership,
limited liability partnership, joint venture nor an unincorporated
association.

3.      BW, whatever it may be, appears to operate from a principal place of
business in New York City.

4.      Gross, is, upon information and belief a New York resident.

413604-1

5.      This action is commenced pursuant to the Sherman and Clayton Antitrust acts, *Sherman and Clayton Acts* 15 USC § 1, et seq. ; 15 USC § 15, et seq., respectively.

6.      Based upon the above, this Court has jurisdiction over the subject matter of this action and the Southern District of New York is the appropriate venue for this action.

## Background

7.      In or about late August of 2007, Wild became aware of an attempt by the International Workers of the World, LU 460/640 ("IWW") to organize its employees.

8.      More specifically, Richard Martin of Wild was asked by IWW organizer Barry Randel if he would negotiate with him.

9.      Mr. Martin, refused to do so.

10.     Certain employees of Wild then staged a strike and picketed Wild, upon information and belief, augmented by IWW and/or BW supporters/members.

11.     Subsequently, certain Wild employees began coming to work late, leaving early or not showing up at all (those workers did not even bother to call to advise Wild they would not be coming to work)

12.     Consequently, a few Wild employees were discharged due to their refusal to come to work and/or come to work in a timely fashion and/or remain at work throughout their shift.

13.     Thereafter, Wild was served with a summons and complaint for an action

pending before the Honorable Louis Stanton of this Court, asserting, *inter*

*alia*, that Wild failed to comply with the Fair Labor Standards Act

("FLSA") and retaliated against employees for complaining about alleged

violations of the FLSA.

14.     Subsequently, certain Wild employees, again heavily augmented by IWW

and/or BW began picketing a restaurant ("Patis") that purchased fish and

seafood products from Wild.

15.     In doing so, BW and/or IWW and its demonstrators defamed Wild,

asserting that its employees were forced to work under substandard

conditions, without vacation benefits, health plans, retirement plans, etc.

16.     In fact, Wild employees work under reasonable conditions, received

vacation and holiday benefits and are eligible for both health and

retirement plans.

17.     Upon information and belief, Patis was told by Gross that the picketing

would continue if Patis continued to buy products from Wild.

18.     Upon information and belief, Gross and BW or Gross on behalf of BW

and/or IWW continued to pressure Patis to cease purchasing products from

Wild.

19.     Finally, On October 4, 2007, Patis succumbed to the pressure from Gross

and/or BW and/or IWW and executed the Agreement attached hereto as

Exhibit "A."

20.     This Agreement provides that as long as Patis and its affiliated restaurants do not purchase products from Wild until currently pending proceedings before Judge Stanton and the National Labor Relations Board are resolved, neither BW nor IWW will engage in further concerted activity against Patis.

## AS AND FOR A FIRST CLAIM FOR RELIEF

21.     Pastis has ceased purchasing products from Wild.

22.     Wild has therefore been injured due to the restraint upon trade devised and effectuated by BW and/or IWW and Gross.

23.     Consequently, Wild has suffered an antitrust injury in an amount not yet fully calculated, but which, if the loss persists, will exceed $1,000.000.00 per year.

24.     BW and/or IWW and Gross do not profit or gain from their coercion of Pastis.

25.     BW and/or IWW and Gross perpetrated an antitrust injury upon Wild and are jointly and severally liable to Wild for same in an amount to be determined at trial.

## AS AND FOR A SECOND CLAIM FOR RELIEF

26.     BW and/or IWW and Gross knew that Pastis routinely entered into contracts with Wild for the purchase of Wild products.

27.     BW and/or IWW and Gross coerced Pastis to cease entering into said contracts.

413604-1

28.     Wild has lost money as a result of the loss of business from Pastis in an amount not yet fully calculated, but which, if the loss persists, will exceed $1,000.000.00 per year.

29.     BW and/or IWW and Gross did not act out of a desire to acquire the Pastis business, but rather from a desire to harm Wild.

30.     Consequently, BW and/or IWW and Gross intentionally interfered with the economic relations of Wild and are jointly and severally liable to Wild for same.

## AS AND FOR A THIRD CLAIM FOR RELIEF

31.     The actions of BW and/or IWW and Gross have damaged Wild's customer relationship with Pastis.

32.     Wild has therefore been irreparably harmed.

33.     BW and/or IWW and Gross must therefore be enjoined from further concerted activity designed to harm Wild by damaging Wild's customer relationships and the Agreement between Pastis and BW must be deemed a nullity.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

34.     On or about September 28, 2007, Gross and other representative of BW advised assorted members of the general public (both orally and in writing) that Wild employees worked under substandard conditions, including, but not limited to, the absence of vacations health plan benefits and/or retirement benefits.

35.     Some or all of these statements were false.

413604-1

36.      Wild has been damaged as a result of these statements losing, according to the Defendants and/or the IWW, 10% of its business or over $1,000,000.00

Wherefore, it is respectfully requested that judgment be entered in favor of Wild and against the Defendants, jointly and severally, for all monetary damages caused by the Defendants' unlawful acts, with interest thereon from September 28, 2007 and that these Defendants be awarded such other and further relief as this Court deems just and proper.

Dated:  Mineola, New York
        October 12, 2007

                                  Meltzer, Lippe, Goldstein & Breitstone, LLP

                                  By_____

                                      Richard M. Howard (RMH-2932)
                                      Attorneys for Defendants
                                      190 Willis Avenue
                                      Mineola, New York 11501
                                      (516) 747-0300

413604-1

# EXHIBIT "A"

Agreement

In consideration of the mutual promises, covenants and agreements set forth below, Pastis and Brandworkers International agree as follows:

1) Within 7 days of execution of this Agreement by Pastis and Brandworkers International, Pastis and its affiliates shall cease to purchase from or do any business with Wild Edibles, its subsidiaries, affiliates, successors, assigners, directors, officers, or alter egos. Pastis affiliates shall include the following restaurants: Balthazar, Morandi, Pravda, Lucky Strike and Schillers Liquor Bar.

2) Upon execution of this agreement, Brandworkers International and the IWW shall not subject Pastis, its employees, or its customers to negative or critical messages regarding the Wild Edibles labor dispute, or engage in any protest activity for any reason or purpose, including but not limited to leafleting, hand-billing, or engaging in any group activity, at or near Pastis or its affiliates (Balthazar, Morandi, Pravda, Lucky Strike and Schillers Liquor Bar).

3) This agreement shall be terminated upon dismissal or resolution of the current labor and employment claims asserted by Wild Edibles' employees against Wild Edibles pending in the United States District Court and before the National Labor Relations Board.

Dated: 1/04/2007

Signature: _____

Name: Daniel Gross
Brandworkers International

Dated: 10/04/2007

Signature: _____

Name: J Alexander van Schaick
Delegate, IWW IU 460/640

Dated: 10/04/2007

Signature: K. McNally

Name: Keith McNally

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
WILD EDIBLES, INC.,
     Plaintiffs,    :

   -against-     :

BRANDWORKERS,     :  **Docket No. 07 CV**
INTERNATIONAL and DANIEL GROSS,
           :
    Defendants.
----------------------------------------------------X

## <u>MEMORANDUM OF LAW</u>

        Meltzer, Lippe, Goldstein & Breitstone, LLP
        Attorneys for Plaintiffs
        190 Willis Avenue
        Mineola, New York 11501
        (516) 747-0300

# TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . .          1

STATEMENT OF FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          2

ARGUMENT
THE DEFENANTS' ACTS CONSTITUTE A RESTRAINT OF
TRADE AND INTENTIONAL INTERFERENCE WITH WILD'S
ECONOMIC RELATIONS, JUSTIFYING THE REQUESTED
PRELIMINARY INJUNCTION. . . . . . . . . . . . . . . . . . . . . . . . . . .          3

    A.    Defendants' Acts Violate the Antitrust Laws. . . . .          3

    B.    Defendants' Intentionally Interfered With
            Wild's Economic Relations. . . . . . . . . . . . . . . . . . . . .          6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
WILD EDIBLES, INC.,
              Plaintiffs,         :

    -against-               :

BRANDWORKERS,             :      **Docket No. 07 CV**
INTERNATIONAL and DANIEL GROSS,
                         :

           Defendants.
-----------------------------------------------------X

### MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

Plaintiff, Wild Edibles, Inc. ("Wild") is entitled to a preliminary injunction, enjoining the Defendants, Brandworkers, International ("Brandworkers"), Daniel Gross ("Gross") and their agents from coercing customers of Wild to stop doing business with Wild. Wild has demonstrated in the moving papers that it will likely succeed in its claim that the Defendants, jointly and severally, unlawfully conspired to restrain Wild's trade and intentionally interfered in Wild's economic relationships. Further, Wild has demonstrated that the harm caused by the Defendants is harm to Wild's customer relationships and therefore irreparable. Finally, Wild has shown that the equities tip decidedly in its favor, as the Defendants have no actual stake in the outcome of the subject motion. Consequently, Wild has demonstrated its likelihood of success on the merits of its claims, the irreparable harm it currently suffers and the balancing of the equities in its favor, entitling Wild to the requested preliminary injunction, *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) *Polanco v. Levitt*, 2007 WL 2902961 (W.D.N.Y.)

The case at bar stems from the efforts of the Internation Workers of the World LU 460/640 ("IWW") to compel Wild to recognize it as the bargaining representative of its employees, regardless of the desires of Wild's employees.    Instead of obtaining a "showing of interest" (via the signing of authorization cards by Wild employees) and petitioning the National Labor Relations Board ("NLRB") for an election, Brandworkers and the IWW seek to coerce Wild to recognize the IWW and negotiate with it. Brandworkers seeks to do so by, *inter alia,* coercing Wild's customers to stop doing business with Wild.    The Defendants do not do this for their own competitive economic profit.  Brandworkers is purportedly a non-profit entity, which appears to be an alter ego of IWW, sharing the same telephone number.  Gross, an individual, is not, like Wild, a purveyor of fine fish and seafood products.  Rather, the Defendants act out of a desire to harm Wild via the exertion of economic pressures in restraint of free trade.

In sum, the Defendants: (a) fully aware of the relationship between Wild and a restaurant known as Pastis (and its affiliated restaurants), to wit; supplier and purchaser; (b) sought to interfere with that relationship by picketing, holding press conference(s) and demonstration(s) in front of Pastis, **complaining about Wild, not Pastis** and asking consumers to refrain from patronizing Pastis (economic pressures); (c) without seeking any economic benefit for themselves, but rather solely in an attempt to injure Wild by depriving it of a substantial purchaser of its product; and (d) succeeded in injuring Wild by obtaining a purported contract from Pastis, in which Pastis agreed not to purchase product from Wild until certain employment litigation (pending before Judge Stanton) and certain NLRB charges are resolved.

Were Brandworkers a labor organization, then their actions would constitute a flagrant secondary boycott in violation of the National Labor Relations Act ("NLRA") and the NLRB could seek the instant injunction. Brandworkers seeks to avoid same, but instead the Defendants commit an unlawful restraint of trade and common law tort. Their actions should be enjoined and the purported contract they extorted from Pastis deemed a nullity.

## STATEMENT OF FACT

The salient facts have been set forth in the moving Affidavit of Richard Martin and are respectfully incorporated by reference herein.

## ARGUMENT

## THE DEFENDANTS' ACTS CONSTITUTE A RESTRAINT OF TRADE AND INTENTIONAL INTERFERENCE WITH WILD'S ECONOMIC RELATIONS, JUSTIFYING THE REQUESTED PRELIMINARY INJUNCTION

### A.    Defendants' Acts violate the Antitrust Laws

It is well settled that coercing the elimination of market choices constitutes an antitrust violation. As stated by the United States Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters* 459 U.S. 519, *528, 103 S.Ct. 897, **903 (U.S.,1983):

> Coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions and may be condemned even without proof of its actual market effect. Cf. *Klors, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 210-214, 79 S.Ct. 705, 708-10, 3 L.Ed.2d 741 (1959).

The Defendants purported desire to improve working conditions for Wild's employees (regardless of how misguided) does not insulate them from liability for their antitrust actions. Even a true labor organizations antitrust exemption does not extend this far, *Id:*

> In this case, however, the Union was neither a consumer nor a competitor in the market in which trade was restrained. It is not clear whether the Union's interests would be served or disserved by enhanced competition in the market. As a general matter, a union's primary goal is to enhance the earnings and improve the working conditions of its membership; that goal is not necessarily served, and indeed may actually be harmed, by uninhibited competition among employers striving to reduce costs in order to obtain a competitive advantage over their rivals.

More specifically, once a labor organization joins with a non-labor organization to restrain competition, its exemption is forfeited and its liability can not be denied. As stated in *Allied Intern., Inc. v. International Longshoremen's Ass'n*, AFL-CIO 492 F.Supp. 334, *337 -338 (D.C.Mass., 1980) *Aff'd.* 640 F.2d 1368, *1380 (1st Cir. 1981):

> Unions may thus qualify for a "labor exemption" from the antitrust laws so long as they do not combine with non-labor groups and act in their "self-interest", despite an apparent common law restraint on competition.
>
> Both prongs of this standard have been further developed by the Supreme Court. Although a union's activities fall within the protection of the Clayton Act, it may be enjoined where it acts in combination with employers to restrict competition or control the product market. United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, supra.

In the case at bar, the conspiracy engineered by the Defendants to coerce Pastis is

blatant and their written agreement dispositive of an issue usually left to far "grayer"

evidence:

> Illegal conspiracies, of course, can rarely be proved
> through evidence of explicit agreement, but must
> generally be proved through inferences from the
> conduct of the alleged conspirators. See Michelman
> v. Clark-Schwebel Fiber Glass Corp., 534 F.2d
> 1036, 1043 (2d Cir.), cert. denied, 429 U.S. 885, 97
> S.Ct. 236, 50 L.Ed.2d 166 (1976). It is clear,
> however, that "the circumstances (must be) such as
> to warrant a jury in finding that the conspirators had
> a unity of purpose or a common design and
> understanding, or a meeting of minds in an unlawful
> arrangement." American Tobacco Co. v. United
> States, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90
> L.Ed. 1575 (1946).

*Venture Technology, Inc. v. National Fuel Gas Co.* 685 F.2d 41, *45 (C.A.N.Y., 1982)

*Cert Denied, Schwimmer v. Sony Corp. of America* 459 U.S. 1007, *1008, 103 S.Ct. 362,

**363, 74 L.Ed.2d 398, 1982-83 Trade Cases P 65,022 (U.S.1982), *Rehearing Denied by*

*Venture Technology Inc., v. National Fuel Gas Distribution Corporation*, 459 U.S. 1138,

103 S.Ct. 775, 74 L.Ed.2d 986 (U.S.N.Y. Jan 10, 1983) (NO. 82-362)    *AND*

*Rehearing Denied by Schwimmer v. Sony Corp. of America*, 459 U.S. 1189, 103 S.Ct.

840, 74 L.Ed.2d 1032 (U.S.N.Y. Jan 24, 1983) (NO. 82-277).

As set forth above and in the moving Affidavit of Richard Martin, the Defendants

have engaged in a blatant boycott of Wild's product, coercing Pastis to join in the

conspiracy and flagrantly revealing their unlawful acts through the written agreement

between Brandworkers, the IWW and Pastis. Such actions are unlawful. As set forth in

*Bodine Produce, Inc. v. United Farm Workers Organizing Committee* 494 F.2d 541,

*561 (9th Cir. 1974):

413657-1                                    5

> Subparagraph D supplements this by alleging agreements, designed to implement the conspiracy pleaded in paragraph four, between the defendants and operators of retail stores throughout the United States to refrain from purchasing, handling or selling table grapes.
>
> These general allegations are sufficiently broad to embrace perhaps all, and at least part, of the activities not specifically alleged by the plaintiffs. Moreover, such activities cannot unreservedly be placed within the labor exemption to the Sherman Act. The issue thus becomes whether these allegations constitute compliance with Rule 8(a)(2). We hold that they do.

These types of boycotts are illegal both under the NLRA and the antitrust laws. As stated in *The Leff Dictionary Of Law: A Fragment* 94 Yale L.J. 1855, *2203 - 2204 (.1985):

> Boycotts are also important in labor law. While it has been established (though not without some struggle) that the refusal among workers in a union to work for a particular employer until he meets their demands is not itself violative of the antitrust laws, it is also generally the law that workers and unions may not take part in a "secondary boycott," i.e., employ economic weapons, especially picket lines, to coerce an employer with whom the union has no labor dispute to cease doing business with one with whom it does. Thus, e.g., it would be an unlawful secondary boycott (under § 8(b)(4)(ii)(B) of the NLRA) for the union representing an automobile manufacturer's workers to picket in front of an auto retailer's showroom.

Based upon the above, the Defendants flaunting of their violation of the Sherman

and Clayton acts cannot be countenanced and should be immediately enjoined.


**B.**    **Defendants Intentionally Interfered With Wild's Economic Relations**

It is beyond dispute, considering the written agreement between Pastis, the IWW and Brandworkers, that: (a) a relationship existed between Pastis and Wild (to wit: purchaser and supplier); (b) the Defendants were fully aware of said relationship; (c) the Defendants set out to and intended to interfere with that relationship; and (d) the Defendants succeeded in injuring Wild via said interference.    Consequently, Wild has established its *prima facie* case, *Wrenn v. New York City Health and Hospitals Corp.* 104 F.R.D. 553, *558 (S.D..N.Y.1985)

In fact, Wild has met far more than its pleading burden. Wild has met its burden of proof, sufficient to sustain a verdict against the Defendants. In order to do so, in addition to the above, Wild must establish that either the Defendants sole purpose for interfering was to harm Wild or that the means employed by the Defendants were unfair, improper or constituted an independent tort, *Schorr v. Guardian Life Insurance Company of America*, 2007 Slip Op 07331, decided October 2, 2007 (App. Div. 1st Dep't. 2007).

As neither Gross nor Brandworkers are competitors of Wild, their purpose could only be to harm Wild. As the New York State Court of Appeals stated in *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.* 50 N.Y.2d 183, *190, 406 N.E.2d 445, **448-449, 428 N.Y.S.2d 628,**632 - 633 (N.Y., 1980):

> Although his status as a competitor does not protect the interferer from the consequences of his interference with an existing contract, it may excuse him from the consequences of interference with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful.

In the case at bar, the Defendants are not competitors, their intent is solely to harm Wild **AND** they have employed improper means to do so. Improper means have been defined as including both antitrust violations and economic pressures, however, any independent tort suffices. In Martin Ice Cream Co. v. Chipwich, Inc. 554 F.Supp. 933, *945 -946 (S.D.N.Y.1983) the Court specifically stated:

> The Court, however, cannot agree with the defendants, at least not to the extent that it finds that Martin has adequately pled and raised a question of fact concerning improper means of interference by the defendants. It is beyond dispute that a conspiracy to unreasonably restrain trade or to monopolize trade would constitute improper means. Thus, if Martin is able to prove the antitrust violations discussed earlier, it will also be able to prove improper means.

Similarly, the New York Court of Appeals in *Guardian Life, Supra,* stated, "Wrongful means" include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure;" *Accord, NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.* 87 N.Y.2d 614, *624, 664 N.E.2d 492, **497, 641 N.Y.S.2d 581, ***586 (N.Y.,1996)

In the case at bar, the Defendants, intending solely to harm Wild, engaged in civil suits (the FLSA Complaint currently pending and the additional threats of Gross in the ONNYTURF blog), antitrust violations and thereby exerted economic pressure in the nature of a secondary boycott. In sum, the Defendants have intentionally and tortiously interfered with Wild's economic relations and should be enjoined from continuing to do so. Similarly, the purported agreement between Brandworkers, the IWW and Pastis should be deemed a nullity.

413657-1                                    8

Wherefore, it is respectfully requested that the Subject Motion be granted in its entirety and that the Plaintiff be awarded such other and further relief as this Court deems just and proper.

Dated:    Mineola, New York
          October 10, 2007

Meltzer, Lippe, Goldstein & Breitstone, LLP

By_____
     Richard M. Howard (RMH-2932)
     Attorneys for Plaintiff
     190 Willis Avenue
     Mineola, New York 11501
     (516) 747-0300

413657-1                          9