Thomas A. Arena (TA-4613)
Robert R. Schriver (RS-6924)
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

David A. Colodny (DC-4234)
URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, NY 10038
(646) 602-5600

*Co-counsel for Defendants Brandworkers International and Daniel Gross.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILD EDIBLES, INC., | **ECF CASE** |
| Plaintiff, | |
| -against- | No. 07 Civ. 9225 (LLS) |
| INDUSTRIAL WORKERS OF THE WORLD LOCAL 460/640, BRANDWORKERS INTERNATIONAL, and DANIEL GROSS, | |
| Defendants. | |

**DEFENDANTS BRANDWORKERS INTERNATIONAL AND DANIEL GROSS'**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS WILD EDIBLES, INC.'S AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY......................................................................................... 1

OPERATIVE ALLEGATIONS OF THE AMENDED COMPLAINT ......................... 3

ARGUMENT ............................................................................................................ 7

I.  STANDARD OF REVIEW .............................................................................. 7

II.  WILD EDIBLES HAS FAILED TO ADEQUATELY PLEAD A VIOLATION
    OF RICO UNDER 18 U.S.C. §§ 1962(C) & (D) ............................................. 8

    A.  Wild Edibles Has Failed Adequately To Plead Claims Under § 1962(c)............... 8

        1.  Wild Edibles Has Failed Adequately To Plead A Pattern Of
            Racketeering Activity ............................................................... 8

        2.  Wild Edibles Has Failed Adequately To Plead The Existence Of A
            Racketeering Enterprise ........................................................... 14

        3.  Wild Edibles Has Failed To Allege The Requisite Impact On
            Interstate Commerce ................................................................ 17

    B.  Wild Edibles Has Failed Adequately To Plead The Existence Of A RICO
        Conspiracy Under § 1962(d).................................................................17

III.  WILD EDIBLES HAS FAILED TO ALLEGE A CLAIM PURSUANT TO
      SECTION 303 OF THE LMRA ....................................................................... 19

    A.  Wild Edibles' Allegations That Daniel Gross Is An Agent Of IWW And
        Brandworkers Are Insufficient To Subject Him To Section 303 Liability............19

    B.  Brandworkers International Is Not Subject To Section 303 Liability As An
        Agent Of IWW Or As A Labor Organization.........................................................20

        1.  Wild Edibles' Allegation That Brandworkers Is An Agent Of IWW
            Is Insufficient To Subject It To Section 303 Liability ............................ 20

        2.  Wild Edibles Does Not Sufficiently Allege That Brandworkers
            International Is A "Labor Organization" Under The LMRA................... 20

    C.  Wild Edibles Has Failed To Allege Any Violations Of Section 8(b)(4) ..............23

IV.  WILD EDIBLES' CLAIM FOR TORTIOUS INTERFERENCE WITH
     PROSPECTIVE BUSINESS RELATIONS SHOULD BE DISMISSED........................25

     A.  This Court Should Decline To Exercise Supplemental Jurisdiction Over
         The Claim...........................................................................................................25

     B.  Alternatively, The Claim Should Be Dismissed For Failure Adequately To
         State A Claim.......................................................................................................25

V.   WILD EDIBLES' CLAIMS SHOULD BE DISMISSED BECAUSE THE
     ALLEGED CONDUCT BY THE ADVOCACY DEFENDANTS IS
     PROTECTED FREE SPEECH UNDER THE FIRST AMENDMENT ...........................29

CONCLUSION.................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Anatian v. Coutts Bank (Switz.) Ltd.*,
  193 F.3d 85 (2d Cir. 1999).......................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) .................................................................................... passim

*Big Apple Supermarkets, Inc. v. Dutto*,
  237 F. Supp. 774 (E.D.N.Y. 1965) ......................................................................... 24

*Broad v. Conway*,
  675 F. Supp. 768 (N.D.N.Y. 1987) .......................................................................... 23

*Broadmoor Homes, Northern v. Cement Masons,
  Local 594,* 507 F. Supp. 55 (N.D. Cal. 1981) ....................................................... 20

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) .................................................................................................. 25

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ................................................................................................. 27

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229, 244 (2d Cir. 1999) ............................................................................ 17

*Conley v. Gibson*,
  355 U.S. 41 (1957) ..................................................................................................... 8

*Connolly v. Havens*,
  763 F. Supp. 6 (S.D.N.Y. 1991) ............................................................................... 19

*Davis Lee Pharm., Inc. v. Manhattan Cent. Capital Corp.*,
  327 F. Supp. 2d 159 (E.D.N.Y. 2004) ..................................................................... 11

*De Jesus v. Sears, Roebuck & Co.*,
  87 F.3d 65 (2d Cir. 1996) ........................................................................................... 7

*De Falco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)................................................................................ 14, 15

*Edmund E. Garrison, Inc. v. Int'l Union of Operating Eng'rs*,
  283 F. Supp. 771 (S.D.N.Y. 1968).......................................................................... 20

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*,
  485 U.S. 568 (1988).................................................................................................. 24

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
  623 F. Supp. 1038 (S.D.N.Y. 1985)........................................................................ 29

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)............................................................... 14, 15, 16, 18

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*,
  67 F.3d 463 (2d Cir. 1995)....................................................................................... 11

*H.J., Inc. v. Northwestern Bell Tel. Co.*
   492 U.S. 229 (1989)..................................................................................11, 12, 13

*Havana Central NY2 LLC v. Lunney's Pub, Inc.*,
   49 A.D.3d 70, 74 (1st Dep't 2007) .......................................................... 26

*Hoatson v. N.Y. Archdiocese*,
   No. 05 Civ. 10467, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) .......................... 11

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007).................................................................... 7

*Lovell v. City of Griffin*,
   303 U.S. 452 (1938)............................................................................. 29

*Mario & DiBono Plastering Co. v. Metallic Lathers Union of N.Y. & Vicinity*,
   No. 75-4075, 1976 WL 1619 (S.D.N.Y. Mar. 8, 1976).................................. 19, 20

*Moore v. Guesno*,
   485 F. Supp. 2d 300 (W.D.N.Y. 2007) ...................................................... 17

*NAACP v. Claiborne*,
   458 U.S. 886 (1982) ............................................................................ 29

*Naso v. Park*,
   850 F. Supp 264 (S.D.N.Y. 1994)............................................................ 19

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*,
   87 N.Y.2d 614 (1996).......................................................................... 27

*NLRB v. Fruit & Vegetable Packers Local 760*,
   377 U.S. 58 (1964)............................................................................. 24

*NLRB v. Peninsula Gen. Hosp. Med. Center*,
   36 F.3d 1262 (4th Cir. 1994) ................................................................. 21

*NLRB v. Streamway Div. of the Scott & Fetzer Co.*,
   691 F.2d 288 (6th Cir. 1982) ................................................................. 21

*Polo Fashions, Inc. v. Fashion Assocs.*,
   No. 82 Civ. 8470, 1986 WL 1176 (S.D.N.Y. Jan. 22, 1986 ............................. 28

*Port Dock & Stone Corp. v. OldcastleNortheast, Inc.*,
   507 F.3d 117 (2d Cir. 2007).................................................................... 7

*Redeye Grill v. Restaurant Opportunities Center of New York, Inc.*,
   No. 117382/05, 2006 WL 2726823 (N.Y. Sup. Aug. 16, 2006)......................... 26

*Robbins v. Ogden Corp.*,
   490 F. Supp. 801 (S.D.N.Y. 1980)............................................................ 29

*Scheidler v. NOW*,
   537 U.S. 393 (2003)............................................................................. 10

*SMJ Group Inc. v. 417 Lafayette Rest. LLC*,
   06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y Aug. 30, 2006)......................... 27, 30

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008).............................................................9, 11, 12, 13

*Strip Clean Floor Refinishing v. N.Y. Dist. Council No. 9 Broth. of Painters*,
   333 F. Supp. 385, 398 (E.D.N.Y. 1971) .................................................... 20

*Tavakoli-Azar v. Crescent Mgmt., Inc.*,
  No. 97 Civ. 0696, 1998 WL 426733 (S.D.N.Y. July 28, 1998) ........................................... 17

*Thornhill v. Alabama*,
  310 U.S. 88 (1940) ................................................................................................................ 29

*Town of W. Hartford v. Operation Rescue*,
  915 F.2d 91 (2d Cir. 1990) ................................................................................................... 25

*Valencia ex rel. Franco v. Lee*,
  316 F.3d 299 (2d Cir. 2003) ................................................................................................. 25

*Weber v. Churchill Comms. Group*,
  No. 86 Civ. 2894, 1988 WL 10861 (S.D.N.Y. Feb. 10, 1988) ........................................... 28

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
  530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................................................................................. 18

## STATUTES AND RULES

18 U.S.C. § 1961(4) ...............................................................................................................5, 8

18 U.S.C. §§ 1962(c) & (d) .................................................................................................. passim

28 U.S.C. § 1367(c)(3) .............................................................................................................. 24

29 U.S.C. § 152(5) ..................................................................................................................... 20

29 U.S.C. § 187 ............................................................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 1

Hobbs Act, 18 U.S.C. § 1951 .................................................................................................. 8, 9

## OTHER AUTHORITIES

*Mercy-Memorial Hosp. Corp. & Local 79*,
  *Serv. Employees Int'l Union, AFL-CIO*, 231 N.L.R.B. 1108 (1977) ................................... 21

*Rest. Opportunities Center of N.Y.*,
  Case No. 2-CP-1067, General Counsel Advice Memorandum, Nov. 30, 2006,
  *available at*
  http://www.nlrb.gov/shared_files /Advice%20Memos/2006/2-CP-1067.htm .................... 21

Defendants Brandworkers International and Daniel Gross (the "Advocacy Defendants"), by their attorneys Milbank, Tweed, Hadley & McCloy LLP, respectfully submit this memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This is Plaintiff Wild Edibles' second bite at the apple. Six months after this Court dismissed its first complaint *sua sponte*, Wild Edibles has filed an Amended Complaint alleging the same facts but asserting new causes of action. Whereas the original complaint had accused the Advocacy Defendants of violating federal antitrust law, Wild Edibles now alleges that they conspired together with the Industrial Workers of the World Local 460/640 (the "IWW") to form a racketeering enterprise that extorted restaurants that happened to do business with Wild Edibles. Further, after representing to the Court on no fewer than three occasions that Defendant Brandworkers International was ***not*** a "labor organization," the Amended Complaint now alleges that Brandworkers International and its sole officer Daniel Gross "acted as" a labor organization in order to plead new claims arising under the federal labor laws. Finally, the Amended Complaint erroneously alleges that the First Amendment-protected activities of the Advocacy Defendants suffice to establish a state law claim for tortious interference with economic relations. As set forth more fully below, each of Wild Edibles' new claims is devoid of legal merit, and the Amended Complaint should be dismissed with prejudice.

## PROCEDURAL HISTORY

On September 17, 2007, employees of Wild Edibles commenced an action (the "FLSA Action") against Wild Edibles and its owners alleging violations of the Fair Labor

Standards Act ("FLSA").[1]  In the FLSA Action, the plaintiffs have alleged numerous violations

of employment and labor law, such as Wild Edibles' failure to pay its employees for all the hours

they worked, including unpaid overtime and spread-of-hours wages, and retaliation against

several employees for complaining about its failure to pay those wages.[2]  This Court entered a

preliminary injunction against Wild Edibles on December 18, 2007, enjoining it from taking any

adverse employment action against, or terminating the employment of, any of its employees for

such complaints, and further restraining Wild Edibles from terminating any employee without

providing three days' notice to counsel.[3]  The FLSA Action remains pending before this Court.

On October 15, 2007—just one month after the commencement of the FLSA

Action—Wild Edibles filed its original complaint  (the "Original Complaint") against the

Advocacy Defendants.  The Original Complaint alleged that the Advocacy Defendants inflicted

"antitrust injury" on Wild Edibles by picketing certain New York City restaurants and their

patrons and urging them to cease purchasing products from Wild Edibles.[4]  Wild Edibles sought

the entry of an order preliminarily enjoining the Advocacy Defendants from "coercing"

restaurants and their patrons to terminating their business relationship with Wild Edibles.[5]

On October 18, 2007, this Court held a hearing on Wild Edibles' application for a

preliminary injunction.  On three separate occasions, Wild Edibles advised this Court that

Brandworkers was not a labor organization and therefore could not be liable under section 303

("Section 303") of the Labor Management Relations Act (the "LMRA"), which provides a

private right of action for certain labor law violations under the National Labor Relations Act

---

[1]    *See* Declaration of Robert R. Schriver in Support of Defendants Brandworkers International and Daniel Gross's Motion to Dismiss the Amended Complaint, dated May 23, 2008 (the "Schriver Decl.") Exhibit ("Ex.") A (FLSA Complaint).

[2]    *See id.* ¶¶ 36-49.

[3]    *See id.* Ex. B at 17 (Opinion, Order, and Injunction, dated Dec. 18, 2007).

[4]    *Id.* Ex. C ¶ 23 (Original Complaint).

[5]    *Id.* Ex. D at 2 (Transcript of Oct. 18, 2007 hearing on Wild Edibles' Order to Show Cause).

(the "<u>NLRA</u>").[6]  The Original Complaint did not name IWW as a defendant; Wild Edibles'

counsel implicitly acknowledged that he had intentionally excluded IWW as a defendant in order

to avoid dismissal under the Norris-LaGuardia Act, which precludes injunctive relief in a labor

dispute.[7]

At the hearing, the Court held that Wild Edibles had failed to allege adequately

any antitrust violations against Brandworkers and Daniel Gross and dismissed the Original

Complaint as a "sham pleading."[8]  Although the Court granted Wild Edibles leave to re-plead,[9] it

still had not done so by March 17, 2008, and the Court closed the case on that date.

On April 14, 2008, more than one month after the Court closed the case and more

than six months after the Court dismissed the Original Complaint, Wild Edibles filed its

Amended Complaint.  According to the docket, the case remains closed.

<u>OPERATIVE ALLEGATIONS OF THE AMENDED COMPLAINT</u>

The Amended Complaint alleges that the Advocacy Defendants, together with

defendant IWW, have conspired to participate in a scheme to force New York City restaurants to

purchase their fish and seafood from wholesalers other than Wild Edibles.[10]  The Amended

Complaint alleges that it is the goal of the Advocacy Defendants to induce Wild Edibles to

bargain and sign a collective bargaining agreement with the IWW.[11]  The Amended Complaint

alleges that, to effect their goals, the Advocacy Defendants have conducted a "campaign of

coercive, intimidating, and extortionate conduct" at certain restaurants.[12]  Wild Edibles alleges

that the defendants' conduct included "threats of picketing, harassment and confrontation with

---

[6]      *See id*. at 6.
[7]      *See id*. at 7
[8]      *Id*. at 8.
[9]      *See id*. at 9.
[10]     *See* Amended Complaint ("<u>Am. Compl.</u>") ¶ 10.
[11]     *See id.*
[12]     *Id.* ¶ 11.

- 3 -

the retail customers, distribution of false and defamatory statements about Wild Edibles, and other unlawful conduct."[13]

Although the Amended Complaint alleges that this conduct began more than two years ago,[14] the only specific acts identified by Wild Edibles are alleged to have taken place in September and October 2007.  Specifically, the Amended Complaint alleges that in September 2007 the Advocacy Defendants contacted the restaurant Pastis, made allegedly false assertions about Wild Edibles' employment practices to "defraud[ed]" Pastis, and "threaten[ed]" to engage in picketing and other demonstrations outside the restaurant "which would involve and harass the restaurant's customers" unless Pastis agreed to stop doing business with Wild Edibles.[15]  Wild Edibles alleges that on September 17, 2007,[16] the Advocacy Defendants picketed Pastis and that on October 4, 2007, the owners of Pastis and its affiliated restaurants, the Baltazar Group, agreed to cease doing business with Wild Edibles in exchange for the Advocacy Defendants' agreement to stop their picketing activities.[17]

The Amended Complaint also alleges that in October 2007 the Advocacy Defendants "threatened" the Manhattan restaurant Union Square Café with "trouble" if it continued to do business from Wild Edibles, and purportedly made false assertions about Wild Edibles' treatment of its employees.[18]  That same month, according to the Amended Complaint, the Advocacy Defendants engaged in a campaign of "picketing, leafleting, display of an

---

[13]     *Id.*
[14]     *See id.* ¶ 10.
[15]     *Id.* ¶ 16.
[16]     Paragraph 17 of the Amended Complaint alleges that the picketing of Pastis took place on "September 17, 2008."  Obviously, September 17, 2007 is meant because (a) that date is in the future, and (b) the activity earlier is alleged to have occurred in "September 2007."  *Id.* ¶ 16.
[17]     *See id.* ¶¶ 17-19.
[18]     *Id.* ¶ 23.

inflatable Rat [sic] and other demonstrations" at Union Square Café.[19]  Wild Edibles alleges that

this conduct "did defraud and coerce" Union Square Café to enter into an agreement with the

Advocacy Defendants to stop doing business with Wild Edibles in exchange for a cessation of

the picketing activities.[20]

        Wild Edibles further alleges that, at unspecified points in time "since in or about

October 2007," the Advocacy Defendants have engaged in picketing outside other New York

City restaurants, resulting in the entry of agreements similar to those with Pastis and Union

Square Café.[21]

        The Amended Complaint is replete with vague and conclusory allegations devoid

of any factual details.  For example, the Amended Complaint alleges that the defendants

communicated with the Manhattan restaurant Pastis using "the U.S. Mail, telephone, and/or other

facilities in interstate commerce,"[22] and that the Advocacy Defendants "have acted as a labor

organization with regard to Plaintiff with regard to the IWW union member employee grievances

. . . ."[23]  And although the Amended Complaint refers at various points to "loss of business,"[24]

"loss of goodwill and other damages,"[25] and "loss of income, loss of good will, loss of future

earnings and profits and other damages,"[26] Wild Edibles does not ever actually request damages

for lost profits but simply asks for a sum of money.[27]

---

[19]    *Id.* ¶ 21.

[20]    *Id.* ¶ 24.

[21]    *Id.* ¶ 27.

[22]    *Id.* ¶ 16; *see also id.* ¶¶ 15, 22-23, 25-26.

[23]    *Id.* ¶ 30.

[24]    *Id.* ¶ 20.

[25]    *Id.* ¶¶ 39, 42, 45

[26]    *Id.* ¶ 51.

[27]    *See id.* at 13 (requesting a judgment be entered "[i]n the amount of $1,500,000.00 and any further sums proved at trial, with interest thereon").

The Amended Complaint purports to assert three types of claims against the Advocacy Defendants and IWW.  ***First***, Wild Edibles asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO").[28]  Wild Edibles alleges that each of the defendants acted together as an "association-in-fact" enterprise under 18 U.S.C. § 1961(4), which Wild Edibles refers to as the "Extortion Enterprise."[29]  Alternatively, Wild Edibles alleges that the IWW and Brandworkers together constitute a separate criminal "enterprise," which it refers to as the "IWW Enterprise."[30]  Although the Amended Complaint contains specific allegations as to only two instances in which the Advocacy Defendants engaged in picketing activities outside New York City restaurants, it alleges that the defendants engaged in a pattern of racketeering activity in which they purportedly extorted restaurants of money or property affecting interstate commerce.

***Second,*** Wild Edibles asserts claims against the Advocacy Defendants and IWW under Section 303 of the LMRA,[31] 29 U.S.C. § 187, alleging that the defendants violated the LMRA by "threats, illegal picketing, and other secondary boycott activity."[32]  These claims are based on new allegations that the Advocacy Defendants "have acted as a labor organization"[33] and that the Advocacy Defendants at all times acted as the agents of IWW while purporting to be a "'workers rights' organization rather than a labor organization."[34]  As discussed below, this claim, in addition to being defectively pleaded, is based on new allegations that are directly contradicted by specific statements Wild Edibles' counsel made to this Court at the October 18 conference.

---

[28]     *See id.* ¶¶ 32-45.
[29]     *Id.* ¶ 33.
[30]     *Id.* ¶¶ 40-42.
[31]     *See id.* ¶¶ 46-47.  The LMRA claim is incorrectly captioned "Tortious Interference."
[32]     *Id.* ¶ 1; *see also id.* ¶ 46.
[33]     *Id.* ¶ 30.
[34]     *Id.* ¶ 28.

*Third*, the Amended Complaint asserts a claim against the Advocacy Defendants for tortious interference with prospective economic relations under New York law.[35]  Even assuming this Court has a jurisdictional basis over this state law claim – which it does not – the claim is deficiently pleaded and should be dismissed with prejudice.

## ARGUMENT

## I.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).  Therefore, the Court must accept the well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor.  *See id.*  However, to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted and alteration in original).  Rather, as the Supreme Court explained in *Twombly*, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The Second Circuit has described *Twombly* as requiring that "a complaint . . . allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."  *Port Dock & Stone Corp. v. OldcastleNortheast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  In other words, the *Twombly* standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

---

[35]    *See id.* ¶¶ 48-51.  The tortious interference claim in turn is incorrectly captioned "LMRA § 303."

A plaintiff can no longer rest on the old *Conley v. Gibson* rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As the Supreme Court put it in *Twombly*, the "no set of facts" standard "has earned its retirement," and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1960.

## II.    WILD EDIBLES HAS FAILED TO ADEQUATELY PLEAD A VIOLATION OF RICO UNDER 18 U.S.C. §§ 1962(C) & (D)

To state a civil RICO claim, a plaintiff must allege the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999).  The Amended Complaint asserts three claims under RICO: two violations of 18 U.S.C. § 1962(c), each relating to a separate "enterprise," and one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d).  As discussed more fully below, Wild Edibles' RICO claims fail on three independent grounds — the Amended Complaint fails adequately to plead (a) a "pattern" of racketeering activity, (b) a RICO "enterprise," and (c) the requisite effect of the Advocacy Defendants' alleged actions on interstate commerce. Additionally, the Amended Complaint fails to allege any facts establishing the existence of a RICO conspiracy.  Accordingly, the RICO claims should be dismissed.

### A.    Wild Edibles Has Failed Adequately To Plead Claims Under § 1962(c)

#### 1.    Wild Edibles Has Failed Adequately To Plead A Pattern Of Racketeering Activity

To establish a claim under RICO, a plaintiff must plead, among other things, that the defendant has committed two or more "predicate acts" that constitute a "pattern" of

racketeering activity. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). The predicate acts, which are narrowly defined by 18 U.S.C. § 1961(1) to include only certain enumerated offenses, "must be related, and either amount to or pose a threat of continuing criminal activity." *Id.* (internal quotation marks and brackets omitted).

In this case, the only predicate acts identified by Wild Edibles are alleged violations of the Hobbs Act, 18 U.S.C. § 1951, which proscribes actual or attempted robbery or extortion affecting interstate commerce. *See* Am. Compl. ¶ 35. These alleged predicate acts fail to constitute a "pattern" for two reasons. First, as a matter of law, the facts alleged in the Amended Complaint do not amount to cognizable violations of the Hobbs Act. Second, the Amended Complaint does not adequately allege the continuity required to constitute a "pattern of racketeering activity" under RICO.

### a.    The Amended Complaint Does Not Adequately Allege Violations Of The Hobbs Act

The Amended Complaint purports to allege just two predicate acts in furtherance of the alleged racketeering enterprise. It alleges that in September 2007 the Advocacy Defendants "extorted" the restaurant Pastis and then the following month, in October 2007, they "extorted" the restaurant Union Square Café. *See* Am. Compl. ¶ 35. The Advocacy Defendants did so, Wild Edibles alleges, "by the wrongful use of actual or threatened force/blocking of ingress and egress to and from their restaurants, violence or fear (including fear of economic loss)."[36] *Id.*

These allegations, even if true, do not suffice to state violations of the Hobbs Act. The Hobbs Act provides in relevant part:

---

[36]    The factual allegations in the Amended Complaint, however, refer to no "violence" or use of force, and state only that the Advocacy Defendants picketed restaurants, "threaten[ed]" to do so, and, in the case of the restaurant Pastis, "did involve and harass the restaurant's customers," without further explanation. Am. Compl. ¶¶ 17, 23, 26.

(a)  Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b)  As used in this section—

* * *

(2)  The term "extortion" means the *obtaining* of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951 (emphasis added).  To state a claim under the Hobbs Act, a plaintiff must allege that the defendant not only "deprived" the plaintiff of property but also that the defendant "obtained" that property.  *Scheidler v. NOW*, 537 U.S. 393, 402-04 (2003).

The Amended Complaint does not contain any specific allegations that the Advocacy Defendants obtained any property from the restaurants, other than a vague allegation that "the Defendant's [sic] obtained property/concessions from the retail food purveyors."  Am. Compl. ¶ 35.  The Amended Complaint, however, does not plead any facts identifying the "property/concessions" purportedly received by the Advocacy Defendants.  To the extent the alleged "concessions" relate to agreements the restaurants made to stop purchasing food from Wild Edibles, such a "concession" is not property subject to the Hobbs Act because it is not "something of value" that the Advocacy Defendants then "could exercise, transfer, or sell." *Scheidler*, 537 U.S. at 405.

*Scheidler* is instructive.  In that case, two abortion clinics brought civil RICO charges against anti-abortion protestors, alleging a nationwide conspiracy to shut down abortion clinics through acts of extortion in violation the Hobbs Act.  Although the Supreme Court recognized that the protestors' acts of "interference and disruption" of the clinics' business may

- 10 -

have "completely deprived" the plaintiffs "of their ability to exercise their property rights," the Court held that the protestors' conduct did not constitute extortion because they did not "obtain" the clinics' property. *Id.* at 394 (protestors "neither pursued nor received 'something of value from' [the clinics] that they could exercise, transfer, or sell"); *see also Hoatson v. N.Y. Archdiocese*, No. 05 Civ. 10467, 2007 WL 431098, at *4 (S.D.N.Y. Feb. 8, 2007) (purported Hobbs Act violations rejected as predicate acts because plaintiff failed to allege that defendants had "received any property from Plaintiff"); *Davis Lee Pharm., Inc. v. Manhattan Cent. Capital Corp.*, 327 F. Supp. 2d 159, 165 (E.D.N.Y. 2004) (same).

Because the Amended Complaint fails to plead facts that describe any predicate act as defined by the RICO Act, Wild Edibles' three RICO claims must be dismissed in their entirety.

### b.    The Amended Complaint Fails To Allege The Required "Continuity"

Wild Edibles also fails to plead the requisite pattern of racketeering activity, because it fails to allege that the acts of racketeering were neither isolated nor sporadic, but continuous. *See GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995); *see also Spool*, 520 F.3d at 183 (plaintiff must allege that the predicates are "related, and either amount to or pose a threat of *continuing* criminal activity" (internal quotation marks and brackets omitted) (emphasis added)).

The element of continuity may be satisfied by alleging either "close-ended" or "open-ended" continuity. *See GICC Capital Corp.*, 67 F.3d at 465-66. Close-ended continuity is shown by proving "a series of related predicates extending over a *substantial* period of time." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989) (emphasis added); *Spool*, 520 F.3d at 184. "Predicate acts extending over a few weeks or months and threatening no future

criminal conduct do not satisfy this requirement." *Northwestern Bell*, 492 U.S. at 242.  Indeed,

the Second Circuit has noted that it has never held a period of less than two *years* of activity

sufficient to satisfy the closed ended continuity requirement.  *See Spool*, 520 F.3d at 184

("Although we have not viewed two years as a bright-line requirement, it will be rare that

conduct persisting for a shorter period of time establishes closed-ended continuity, particularly

where . . . the activities alleged involved only a handful of participants and do not involve a

complex, multi-faceted conspiracy." (internal quotation marks and brackets omitted)).

The Amended Complaint does not establish closed-ended continuity.  The only

specific allegations of racketeering alleged in the Amended Complaint relate to two purported

extortions of restaurants taking place in September and October 2007.  A two-month period does

not amount to a "substantial period of time" under *Northwestern Bell*.  *See id.* (sixteen-month

period of racketeering activity insufficient to establish closed-ended continuity).

Although the Amended Complaint contains a conclusory allegation that the

"scheme" began two years ago, *see* Am. Compl. ¶ 10, it fails to allege any predicate acts that

occurred before September 2007.  *See id.* ¶¶ 15-24.  In fact, the Original Complaint did not

identify any wrongful conduct occurring before "late August of 2007," Schriver Decl. Ex. C ¶ 7,

suggesting that Wild Edibles' newly-fashioned allegation as to the duration of the racketeering

activity was crafted, without regard to specific facts, to try to the inevitable dismissal of the

Amended Complaint for failure to satisfy RICO's continuity requirements.  *See Spool*, 520 F.3d

at 184 ("[T]he duration of a pattern of racketeering activity is measured by the RICO predicate

acts that the defendants are alleged to have committed," not by the period of time when the

defendants allegedly "began conspiring." (internal quotation marks omitted)).  Wild Edibles has

failed to plead close-ended continuity.

Wild Edibles has also failed to plead open-ended continuity. To establish open-ended continuity, a plaintiff must show that there was a threat of continuing criminal activity "extending indefinitely into the future." *Northwestern Bell*, 492 U.S. at 242. The threat of continuing criminal activity must extend "beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 185.

Wild Edibles' conclusory allegation that the alleged extortionate activity threatens to continue indefinitely in the future are insufficient. Again, the only specific factual allegations in the Amended Complaint involve lawful activities beginning in September 2007 and ending in October 2007. *See* Am. Compl. ¶¶ 15-24. Further, all of Wild Edibles' allegations are in the past tense (*see, e.g., id*. ¶ 17 ("Defendants engaged in picketing activity . . . in front of Pastis and did involve and harass the restaurants' customers."); *id*. ¶ 21 ("Defendants began a similar campaign" in front of Union Square Café); *id*. ¶ 23 (defendants "conspired to and did threaten Union Square Café")). Nor does the Amended Complaint allege that the Advocacy Defendants' alleged "extortion" is ongoing. Paragraphs 25-27 of the Amended Complaint allege that the Advocacy defendants "coerce[d]," "defraud[ed]," and "threaten[ed]" other restaurants in New York City "since in or about October 2007," but these allegations, like those relating to the activities outside Pastis and Union Square Café, do not allege that any such activity is ongoing. *Id.* ¶¶ 25-27. Accordingly, Wild Edibles has failed to demonstrate open-ended continuity.

Because the Amended Complaint does not contain allegations sufficient to establish either close-ended or open-ended continuity, Wild Edibles has failed to establish a "pattern" of racketeering activity, and the RICO claims therefore should be dismissed with prejudice.

**2.    Wild Edibles Has Failed Adequately To Plead The Existence Of A Racketeering Enterprise**

The Amended Complaint alleges the existence of two separate RICO enterprises: the "Extortion Enterprise" and "IWW Enterprise."  Like Wild Edibles' allegations of a "pattern" of racketeering activity, its allegations of a RICO enterprise are also defectively pleaded and warrant the dismissal of these claims.

A RICO enterprise is "an entity" that generally is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *De Falco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001).  To survive a motion to dismiss, a plaintiff must allege well-pleaded facts showing that the RICO enterprise is "an ongoing organization, formal or informal," whose "associates function as a continuing unit," *see id.,* and "work together to achieve" their goal, *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).  The complaint must contain "solid information regarding the hierarchy, organization, and activities of [the] alleged association-in-fact enterprise."  *First Capital Asset Mgmt.*, 385 F.3d at 174 (internal quotation marks omitted).  The "conclusory naming of a string of entities does not adequately allege an enterprise."  *Id.* at 175.  Further, under Section 1962(c), "a defendant and the enterprise must be distinct."  *De Falco*, 244 F.3d at 307.

**a.    The "Extortion Enterprise"**

The Amended Complaint states that the three defendants constitute an association-in-fact enterprise that it terms the "Extortion Enterprise."  Am. Compl. ¶ 33.  The Extortion Enterprise, Wild Edibles alleges, is "a group of persons associated together for the common purpose of carrying out the illegal extortion schemes described in this complaint."  *Id.*  The Amended Complaint, however, does not contain any allegations describing any association between the groups except to allege that Brandworkers is "the agent of and for Defendant IWW,"

Am. Compl. ¶ 7, and that Daniel Gross is "an organizer, officer or agent of IWW," *id.* ¶ 8.  Nor does it provide "solid information regarding the hierarchy, organization, and activities" of the alleged enterprise.  *First Capital Asset Mgmt.*, 385 F.3d at 174 (internal quotation marks omitted).  Wild Edibles' conclusory statement that the Defendants together constitute the Extortion Enterprise therefore is insufficient to survive the dismissal of the RICO claim.  *See id.* at 175 (The "conclusory naming of a string of entities does not adequately allege an enterprise.").

The allegations pertaining to the Extortion Enterprise are also deficient because the Amended Complaint does not plead that this enterprise is in any way distinct from the individual defendants IWW, Brandworkers International, and Daniel Gross.  Instead, "Extortion Enterprise" is simply a label applied to the three defendants allegedly acting together.  The Amended Complaint refers only to "the Defendants" and their alleged actions, not to the actions (or even the existence) of an "Extortion Enterprise."  Because the Amended Complaint fails adequately to distinguish between the defendants and the enterprise they allegedly constitute, it does not allege the existence of a RICO enterprise.  *See De Falco*, 244 F.3d at 307.

Finally, Wild Edibles has failed to plead that each defendant participated in the "operation or management" of the Extortion Enterprise.  Such factual pleading is necessary to state a RICO conspiracy claim.  *See First Capital Asset Mgmt.*, 385 F.3d at 176.  This requires allegations sufficient to show that each defendant had "some part" in "directing the affairs of the enterprise."  *Id.*; *see also De Falco*, 244 F.3d at 309 (each defendant must be shown to have participated "in the operation or management of the enterprise").  The Amended Complaint does not, however, describe how the Advocacy Defendants directed the affairs of the "Extortion Enterprise"; instead it makes only the conclusory statement that "[e]ach Defendant conducted and/or participated," Am. Compl. ¶ 37, in the conduct of the enterprise by "planning and

executing . . . the unlawful schemes described herein," *id.* ¶ 38.  This allegation tracks the language of § 1962(c), and merely states that the defendants did what the Amended Complaint alleges that they did.  It does not provide sufficient facts to establish the existence of a racketeering enterprise.

### b.    The "IWW Enterprise"

The allegations of the Amended Complaint are even more deficient with respect to the purported IWW enterprise, alleging only that "IWW and [Brandworkers] together constitute an 'enterprise' . . . [that] engages in, [sic] and the activities of which, affect interstate commerce," Am. Compl. ¶ 40, and that each of the defendants "were employed by, an agent of or associated with" the IWW Enterprise and conducted or participated in its affairs, *id.* ¶ 41.  As with the Extortion Enterprise, this "conclusory naming" of the defendants as the "IWW Enterprise" does not adequately allege the existence of an enterprise.  *First Capital Asset Mgmt.*, 385 F.3d at 175.  Again, these bare allegations fail properly to describe the structure of the alleged IWW Enterprise.  *See id.* at 174-75 (complaint must provide "solid information regarding the hierarchy, organization, and activities" of the alleged enterprise) (internal quotation marks omitted).  Finally, Wild Edibles makes no allegations at all regarding the Advocacy Defendants' participation in this enterprise's operation or management, as is required under RICO.  *See id.* at 176.

Because the Amended Complaint fails to adequately allege the existence of either the "Extortion Enterprise" or "IWW Enterprise," Wild Edibles has failed to state a claim under § 1962(c), and Counts I and II should be dismissed.

### 3. Wild Edibles Has Failed To Allege The Requisite Impact On Interstate Commerce

The Amended Complaint does not adequately allege an interstate nexus.  As for the alleged "Extortion Enterprise," the Amended Complaint makes only the conclusory statement that "[a]t all times relevant, and continuing to date, the Extortion Enterprise was and continues to be engaged in, activities that affected and continue to affect, interstate commerce, within the meaning of § 1962(c)."  Am. Compl. ¶ 34.  Further, when describing the "IWW Enterprise," Wild Edibles alleges only that the enterprise "engages in, and the activities of which, affect interstate commerce."  *Id.* ¶ 40.  These allegations are not sufficient to show the required impact on interstate commerce.  *See Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007) (dismissing RICO claim where only allegation regarding effect on interstate commerce was that the "enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO"); *see also Tavakoli-Azar v. Crescent Mgmt., Inc.*, No. 97 Civ. 0696, 1998 WL 426733, at *4 (S.D.N.Y. July 28, 1998) ("The interstate commerce requirement is a critical consideration for a court as it is this element of the RICO statute that gives the federal courts jurisdiction over RICO actions.  . . .  The Court will dismiss the RICO claim if plaintiffs fail to *specify how* the enterprise alleged affects interstate commerce." (emphasis added)).  Because the Amended Complaint fails to allege any specific effect of the Advocacy Defendants' alleged actions on interstate commerce, the RICO claims should be dismissed.

### B. Wild Edibles Has Failed To Adequately Plead The Existence Of A RICO Conspiracy Under § 1962(d)

To state a claim for RICO conspiracy, a plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (internal quotation marks omitted).  That is, the Amended Complaint must establish that the Advocacy Defendants "agreed to form and associate

themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Id.* Additionally, Wild Edibles is "required to prove that if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45.

    As a preliminary matter, because Wild Edible's § 1962(c) claims are insufficiently pleaded, for the several reasons stated above, the conspiracy claim must also fail. *See First Capital Asset Mgmt.*, 385 F.3d at 182; *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 must fail if the substantive claims are themselves deficient." (internal quotation marks omitted)).

    But even assuming that the Amended Complaint adequately pleads claims under § 1962(c), the conspiracy claim should still be dismissed because Wild Edibles does not allege any facts sufficient to show that any agreement existed between Brandworkers and IWW to commit the alleged predicate acts, or that the Advocacy Defendants knew that the acts were part of a pattern of racketeering activity.  The Amended Complaint contains only the conclusory allegations that "each of the Defendants' [sic] agreed and conspired to violate 18 U.S.C. § 1962(c)," Am. Compl. ¶ 43, and that each Defendant committed "a series of overt acts in furtherance of the Enterprises' unlawful schemes," *id.* at ¶ 44.  Nor does the main body of the Amended Complaint contain any such factual support; instead, it alleges only that the Defendants "have conspired and agreed among themselves" to violate RICO.  Am. Compl. ¶ 3; *see also id.* ¶¶ 10 ("the Defendants conspired together and agreed to continue a scheme . . . "), *id.* ¶ 16 (defendants "conspired to" threaten to picket Pastis), *id.* ¶ 23 (defendants "conspired to" threaten Union Square Café).  These allegations do not set forth facts sufficient to establish the

existence of an agreement to violate RICO; they merely track the elements of the conspiracy offense and are therefore insufficient to survive a motion to dismiss. *See Twombly*, 127 S. Ct. at 1965 (claims based only on "a formulaic recitation of the elements of a cause of action" should be dismissed). Further, nowhere does the Amended Complaint allege that the various defendants had knowledge that their actions were part of a pattern of racketeering activity. *See Naso v. Park*, 850 F. Supp 264, 275 (S.D.N.Y. 1994) (complaint must allege that "defendants consciously agreed to commit predicate acts with knowledge of the scope of the enterprise and intent to further its affairs"); *Connolly v. Havens*, 763 F. Supp. 6, 14 (S.D.N.Y. 1991) (complaint must allege that defendants "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses" (internal quotation marks omitted)). For these reasons, the RICO conspiracy claim is not adequately pleaded and should be dismissed.

### III.    WILD EDIBLES HAS FAILED TO ALLEGE A CLAIM PURSUANT TO SECTION 303 OF THE LMRA

#### A.    Wild Edibles' Allegations That Daniel Gross Is An Agent Of IWW And Brandworkers Are Insufficient To Subject Him To Section 303 Liability

The Amended Complaint alleges that Daniel Gross is subject to liability under Section 303 of the LMRA as an agent of the IWW and as an agent of Brandworkers. *See* Am. Compl. ¶ 8. These allegations, even if accepted as true, are an insufficient basis to subject Daniel Gross, in his individual capacity, to Section 303 liability. The case law is clear that only labor organizations as defined in the statute—and not the agents of labor organizations—can be subject to liability under Section 303. *See, e.g.*, *Mario & DiBono Plastering Co. v. Metallic Lathers Union of N.Y. & Vicinity*, No. 75-4075, 1976 WL 1619, at *1 (S.D.N.Y. Mar. 8, 1976) ("Defendant . . . contends and we agree, that § 303 only authorizes recovery of damages for

unfair labor practices against unions and not their agents"); *see also Edmund E. Garrison, Inc. v. Int'l Union of Operating Eng'rs*, 283 F. Supp. 771, 773 (S.D.N.Y. 1968) (dismissing Section 303 claim against individual defendants, stating that "if an individual cannot commit a § 303(a) offense, he should not be liable in damages under § 303(b)").  Thus, even if Wild Edibles successfully pleaded an agency relationship between IWW and Daniel Gross (which it has not) or Daniel Gross and Brandworkers, Daniel Gross would not be individually liable under the labor laws.  *See Strip Clean Floor Refinishing v. N.Y. Dist. Council No. 9 Broth. of Painters*, 333 F. Supp. 385, 398 (E.D.N.Y. 1971) (dismissing claims in absence of employer's allegations as to "when or where the representations of agency were made; how many representations were made, and by whom representations were made").

### B. Brandworkers International Is Not Subject To Section 303 Liability As An Agent Of IWW Or As A Labor Organization

#### 1. Wild Edibles' Allegation That Brandworkers Is An Agent Of IWW Is Insufficient To Subject It To Section 303 Liability

For the same reason, as discussed in Section III.A, *supra*, that Daniel Gross cannot be liable as an agent under Section 303, Wild Edibles' allegation that Brandworkers is subject to Section 303 liability as an agent of IWW is equally meritless.  *See Mario & DiBono Plastering Co.*, 1976 WL 1619 at *1*; see also Broadmoor Homes, Northern v. Cement Masons, Local 594,* 507 F. Supp. 55, 57 (N.D. Cal. 1981) ("Only two classes of 'persons' can commit an unfair labor practice — unions and employers.").

#### 2. Wild Edibles Does Not Sufficiently Allege That Brandworkers International Is A "Labor Organization" Under The LMRA

To the extent Wild Edibles purports to predicate its Section 303 claim against Brandworkers on the theory that Brandworkers is a labor organization in its own right, it fails to

allege sufficient facts to support its Section 303 claim and, moreover, any such claim is contradicted by prior representations made by Wild Edibles' counsel to this Court.

        First, Wild Edibles fails to allege that Brandworkers qualifies as a "labor organization" within the meaning of the NLRA.  Section 2(5) of the NLRA provides that a "labor organization" is "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and *which exists for the purpose*, in whole or in part, of *dealing with employers* concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."  29 U.S.C. § 152(5) (emphasis added).  In order for an organization to fall within the statute's definition, a plaintiff must allege that the organization engages in consistent dealings with the employer (here, Wild Edibles) on behalf of employees.  *See NLRB v. Streamway Div. of the Scott & Fetzer Co*., 691 F.2d 288, 294 (6th Cir. 1982) (refusing to enforce NLRB finding that representation committee was labor organization where there was no "ongoing association between management and employees"); *see also NLRB v. Peninsula Gen. Hosp. Med. Center*, 36 F.3d 1262, 1263 (4th Cir. 1994) (employee organization was not "labor organization" because it did not actually engage in "pattern or practice" of making proposals to which employer responded); *Mercy-Memorial Hosp. Corp. & Local 79, Serv. Employees Int'l Union, AFL-CIO*, 231 N.L.R.B. 1108 (1977) (determining that group designated to investigate employee grievances and to render decisions was not labor organization because committee did not deal with management but existed to give employees a voice in resolving grievances).  Moreover, the NLRB has refused to hold that organizations like Brandworkers are labor organizations under the NLRA.  *See, e.g*., *Restaurant Opportunities Center of New York*, Case No. 2-CP-1067, General Counsel Advice Memorandum, Nov. 30, 2006, *available at* http://www.nlrb.gov/shared_files /Advice%20Memos/2006/2-CP-1067.htm

(concluding that an organization is not a labor organization where its activities are limited to "social advocacy, legal services, and job-support services for restaurant workers").

Notwithstanding Wild Edibles' bald allegation, made upon information and belief, that "Defendant Brandworkers International . . . is an unincorporated organization acting as a labor organization as defined in Section 2(5) of the Act," Am. Compl. ¶ 7, the Amended Complaint fails to allege that any Wild Edibles' employees have participated in the Brandworkers International organization or, more importantly, that Brandworkers International has had **any dealings** with management (let alone a pattern of dealings). *See Twombly*, 127 S. Ct. at 1965 (2007) ("a formulaic recitation of the elements of a cause of action will not do").  At most, the Amended Complaint alleges that Brandworkers has interacted with certain restaurants; missing are any allegations that Brandworkers has had any dealings with the employer, Wild Edibles.  Accordingly, given Wild Edibles' failure to plead facts sufficient to establish that Brandworkers qualifies as a labor organization, its Section 303 claim should be dismissed against Brandworkers.

Second, this claim should be dismissed against Brandworkers because Wild Edibles' new allegation in the Amended Complaint that Brandworkers is a labor organization is starkly at odds with express representations its counsel made to Your Honor just seven months ago.  At the October 18, 2007 hearing on Wild Edibles' preliminary injunction motion, its counsel told this Court on three separate occasions that Brandworkers was not a labor organization under LMRA:

- "Your Honor, if it was a labor dispute claim, the [sic] Brandworkers International would be a labor organization, ***and they're not***, as they have said";

- "If they are a labor organization, then I can go after them on a secondary boycott….***But they're not a labor organization***."; and

- "But [Brandworkers is] ***not*** a labor organization . . . .  But if they are not a labor organization, then they are not engaged in a labor dispute."[37]

Wild Edibles also informed this Court that the National Labor Relations Board (the "NLRB") had determined that Brandworkers was not a labor organization or an agent of a labor organization.[38]

That preliminary injunction motion—and the Original Complaint—were based on the same alleged conduct that has now been dressed up in the Amended Complaint as RICO and LMRA violations.  Wild Edibles nowhere explains what new facts it now possesses that have prompted its complete reversal on the issue of whether Brandworkers is a labor organization. Certainly, no such new facts are alleged in the Amended Complaint.

Given that Wild Edibles' new allegation is directly contradicted by earlier statements to this Court and is without support or explanation, it appears that this new pleading is a baseless attempt to plead around the earlier dismissal.  Wild Edibles' new allegation should not be credited.  *See Broad v. Conway*, 675 F. Supp. 768, 771 (N.D.N.Y. 1987) (estopping plaintiff from arguing a settlement agreement was obtained through coercion because plaintiff had stated the exact opposite to the judge in open court).

### C.    Wild Edibles Has Failed To Allege Any Violations Of Section 8(b)(4)

Even accepting for the sake of argument that the Advocacy Defendants are "labor organizations" within the meaning of Section 2(5) of the NLRA, this Court should dismiss the Section 303 claim because Wild Edibles has failed to allege secondary boycott activities sufficient to survive a motion to dismiss.

---

[37]    Schriver Decl. Ex. D at 8-9 (emphasis added).

[38]    *Id.* at 9.

The Supreme Court has emphasized that prohibited secondary boycotts apply in limited scenarios—picketing at a secondary site to persuade customers to cease *all trading* with the secondary employer in order to force the secondary employer to cease dealing with the primary employer. *See NLRB v. Fruit & Vegetable Packers Local 760,* 377 U.S. 58, at 72-73 (1964) (holding that union's secondary picketing of retail stores to persuade customers to cease buying the product of primary employer is not within scope of secondary consumer picketing condemned as an unfair labor practice) [hereinafter *Tree Fruits*]; *see also id*. at 70 ("Peaceful consumer picketing to shut off all trade with the secondary employer unless he aids the union in its dispute with the primary employer, is poles apart from such picketing which only persuades his customers not to buy the struck product.").  Where a complaint fails to allege the defendants' conduct extends beyond merely product picketing and is designed to prevent *all trading* with a neutral employer, dismissal is warranted.  *See, e.g., Big Apple Supermarkets, Inc. v. Dutto*, 237 F. Supp. 774, 778 (E.D.N.Y. 1965) (dismissing secondary boycott claim where "[t]he conduct set forth in the complaint is the same type of picketing which was present in [*Tree Fruits*]").  Here, Wild Edibles fails to allege that the Advocacy Defendants sought to persuade the customers to shut off all trading with the restaurants.  Thus, as dictated by *Twombly*, the result should be the same as in *Big Apple Supermarkets*—outright dismissal.

Wild Edibles' allegation that the Advocacy Defendants handed out leaflets in front of specified restaurants is also insufficient to state a Section 303 claim.  *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 579 (1988) ("Our decision in *Tree Fruits,* however, makes untenable the notion that *any* kind of handbilling, picketing, or other appeals to a secondary employer to cease doing business with the employer involved in the labor dispute is 'coercion' within the meaning of § 8(b)(4)(ii)(B) if it has some

economic impact on the neutral."). Thus, without more, Wild Edibles' claims under Section 303 should be dismissed with prejudice.

## IV.    WILD EDIBLES' CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS SHOULD BE DISMISSED

### A.    This Court Should Decline To Exercise Supplemental Jurisdiction Over The Claim

This Court does not need to reach the issue of whether the Amended Complaint adequately states a claim for tortious interference with prospective business relations. Because Wild Edibles' federal law claims are defectively pleaded, and because there is no diversity jurisdiction, the only basis for jurisdiction over Wild Edibles' state law claim is pursuant to the supplemental jurisdiction provisions of 28 U.S.C. § 1367(c)(3)). Courts in the Second Circuit, however, have declined to exercise supplemental jurisdiction over pendent state claims where all federal claims have been dismissed or otherwise eliminated prior to trial. *See, e.g., Valencia ex rel. Franco v. Lee*, 316 F.3d 299 (2d Cir. 2003) (district court's exercise of supplemental jurisdiction over state-law claims after it had dismissed all federal claims was an abuse of discretion); *Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990) (it is well settled that "if the federal claims are dismissed before trial . . . the state claims should be as well"); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). On this basis alone, the Court should dismiss Wild Edibles' tortious interference claim.

### B.    Alternatively, The Claim Should Be Dismissed For Failure Adequately To State A Claim

Even if the Court were to exercise supplemental jurisdiction over this state law claim, it should dismiss the claim for failure to state a cause of action. Under New York law,

"[f]or a cause of action for tortious interference with business relationships to stand, the plaintiff must demonstrate that defendant interfered with the plaintiff's business relationships *either with the sole purpose of harming the plaintiff, or by means that were unlawful or improper*." *Redeye Grill v. Rest. Opportunities Center of N.Y., Inc.*, No. 117382/05, 2006 WL 2726823, at *5 (N.Y. Sup. Aug. 16, 2006) (internal quotation marks omitted) (emphasis added); *see also Havana Central NY2 LLC v. Lunney's Pub, Inc.*, 49 A.D.3d 70, 74 (1st Dep't 2007) (same). The Amended Complaint, however, fails to allege either that the Advocacy Defendants acted "with the sole purpose of harming the plaintiff" or that they used "means that were unlawful or improper."

First, the Amended Complaint does not — and cannot — allege that the sole purpose animating the Advocacy Defendants' alleged conduct was to cause harm to Wild Edibles. Although the Amended Complaint contains conclusory allegations that the Advocacy Defendants intended to harm Wild Edibles' business through their alleged picketing of Wild Edibles' prospective customers, *see, e.g.,* Am. Compl. ¶¶ 11-12, 31, it nowhere alleges that this economic harm was the Advocacy Defendants' "sole purpose." To the contrary, the Amended Complaint itself recognizes that the Advocacy Defendants' alleged conduct had the entirely lawful purpose of convincing Wild Edibles to recognize IWW as the representative of its employees and to enter into a collective bargaining agreement. *See* Am. Compl. ¶¶ 2, 31. Wild Edibles therefore cannot establish that the Advocacy Defendants' "sole purpose" was to harm Wild Edibles.

Nor does the Amended Complaint sufficiently allege that the Advocacy Defendants engaged in "unlawful or improper" conduct. Under the applicable case law, such conduct is defined as "physical violence, fraud or misrepresentation, civil suits and criminal

prosecutions, and some degrees of economic pressure," but does not include "persuasion alone although it is knowingly directed at interference with the contract." *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 624 (1996).  Further, to meet this standard, the alleged conduct "must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).  "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Id.*

Even as portrayed in the Amended Complaint, however, the Advocacy Defendants' conduct falls far short of this level.

*First*, Wild Edibles alleges that the Advocacy Defendants picketed and passed out leaflets at various restaurants that purchased seafood from it – an activity that is neither criminal nor tortious, but in fact is protected by the First Amendment.  *See* Am. Compl. ¶ 1; *SMJ Group Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774, 2006 WL 2516519, at *7 (S.D.N.Y Aug. 30, 2006) (Picketing of restaurants, leafleting, and other lawful "expressive" conduct "is not actionable under the common law and is protected by the First Amendment.  Peaceably demonstrating outside of a business, in and of itself, is not tortious interference with prospective business.").

*Second*, Wild Edibles also alleges that the Advocacy Defendants "harass[ed] and confront[ed] . . . retail customers" and "distribut[ed] false and defamatory statements about Wild Edibles," Am. Compl. ¶ 11.  The Amended Complaint, however, fails to allege any facts whatsoever identifying and explaining any alleged harassment or confrontation with customers, or any false and defamatory statements made.  *See Twombly*, 127 S. Ct. at 1965 (plaintiff must

provide "more than labels and conclusions"; the "allegations must be enough to raise a right to relief above the speculative level").

        *Third*, Wild Edibles alleges that the Advocacy Defendants "coerce[d]" and "defraud[ed]" two restaurants, Pastis and Union Square Café, "by making false assertions about Wild Edibles' employment practices" and threatened to picket those restaurants and "involve and harass" their customers unless they agreed to cease doing business with Wild Edibles. Am. Compl. ¶¶ 16, 22-23. Again, the Amended Complaint fails to specify what assertions about Wild Edibles' employment practices were made, and why they were false, and how any such statements constituted the tort of defamation. Nor does the Amended Complaint contain any allegations sufficient to explain, much less meet the heightened pleading requirements of Rule 9(b), how the Advocacy Defendants "defrauded" these two restaurants.

        *Finally*, the Amended Complaint alleges that the Advocacy Defendants "coerce[d]," "defraud[ed]," and "threaten[ed]" other restaurants in New York City with unspecified "unlawful and harassing activity in front of their restaurants and harassing their customers if they did not agree to cease doing business with Plaintiff." *Id.* ¶¶ 25-26. No facts describing this allegedly threatened "unlawful and harassing activity" are given. Such bald assertions of "improper[]" and "unlawful[]" conduct, *id.* ¶ 49, fail to allege any specific conduct by the Advocacy Defendants that rises to the level of a crime or independent tort under New York law, and courts routinely dismiss such deficiently pleaded claims. *See, e.g.*, *Weber v. Churchill Comms. Group*, No. 86 Civ. 2894, 1988 WL 10861, at *2 (S.D.N.Y. Feb. 10, 1988) ("Plaintiff's conclusory statements about defendants' actions and their effect . . . will not support an action for tortious interference."); *Polo Fashions, Inc. v. Fashion Assocs.*, No. 82 Civ. 8470, 1986 WL 1176, at *2 (S.D.N.Y. Jan. 22, 1986) (dismissing claim for failure to allege "any

contentions that [defendant] utilized any unlawful or improper means"); *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1044 (S.D.N.Y. 1985) (dismissing claim for failure to allege sufficient facts); *Robbins v. Ogden Corp.*, 490 F. Supp. 801, 812 (S.D.N.Y. 1980) (finding no basis for claim for tortious interference with prospective economic relations where "plaintiff fails to specify any unlawful or improper acts by defendants").

Because the Amended Complaint does not allege either that the Advocacy Defendants acted with the sole purpose of harming Wild Edibles or that their conduct amounted to a crime or an independent tort, this claim should be dismissed with prejudice.

## V.    WILD EDIBLES' CLAIMS SHOULD BE DISMISSED BECAUSE THE ALLEGED CONDUCT BY THE ADVOCACY DEFENDANTS IS PROTECTED FREE SPEECH UNDER THE FIRST AMENDMENT

The Amended Complaint alleges that the Advocacy Defendants' presence outside of restaurants (in a public forum) and leafleting violate RICO and the LMRA, and also constitute tortious interference with prospective business relations.  The Supreme Court, however, has held that these activities are protected by the First Amendment.  *See NAACP v. Claiborne,* 458 U.S. 886, 910-11 (1982) (organized non-violent boycotts, picketing and encouraging citizens to avoid patronizing certain establishments were protected First Amendment activities and, therefore, not actionable); *Thornhill v. Alabama,* 310 U.S. 88 (1940) (peaceful picketing is entitled to constitutional protection even when the purpose of that picketing is to encourage customers (and prospective customers) not to patronize a particular employer); *see also Lovell v. City of Griffin*, 303 U.S. 452 (1938) ("[The First Amendment] necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest.").  Thus, claims for liability based on such protected expressive activity cannot be sustained.

In a recent case before Judge Lynch in the United States District Court for the Southern District of New York, *SMJ Group Inc. v. 417 Lafayette Restaurant LLC*, 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y Aug. 30, 2006), the court addressed similar allegations of picketing and leafleting outside a restaurant. Stating that "[l]eafleting on a public street is among our nation's most cherished and protected expressive activities," the court held that the defendants' acts were protected activities (except to the extent there was a contemporaneous trademark infringement that was not part of the expressive activity). *Id.* at *7. Similarly, the Advocacy Defendants' peaceful presence and leafleting in a public forum are constitutionally protected expressive activities that cannot form the basis for a claim under federal or state law, and Wild Edibles' claims should therefore be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss all claims against Defendants Brandworkers International and Daniel Gross with prejudice.

Dated: New York, New York
      May 23, 2008

Respectfully submitted,

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

By:   /s/ Thomas A. Arena
     Thomas A. Arena (TA-4613)
     Robert R. Schriver (RS-6924)
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

URBAN JUSTICE CENTER

By:   /s/ David A. Colodny
     David A. Colodny (DC-4234)
123 William Street, 16th Floor
New York, NY 10038
(646) 602-5600

*Co-counsel for Defendants Brandworkers
International and Daniel Gross*