# Exhibit D

```
                         Hearing Transcript 10-18-2007.txt
                                                                              1
        7airwilm
     1  UNITED STATES DISTRICT COURT
     1  SOUTHERN DISTRICT OF NEW YORK
     2  ------------------------------x
     2
     3  WILD EDIBLES, INC.,
     3
     4              Plaintiff,
     4
     5        v.                                  07 Civ. 9225 (LLS)
     5
     6  BRANDWORKERS INTERNATIONAL
     6  and DANIEL GROSS,
     7                                            Motion
     7              Defendant.
     8
     8  ------------------------------x
     9
     9                                            New York, N.Y.
    10                                            October 18, 2007
    10                                            3:20 p.m.
    11
    11  Before:
    12
    12              HON. LOUIS L. STANTON
    13
    13                                            District Judge
    14
    14
    15              APPEARANCES
    15
    16
    16  MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
    17  Attorneys for Plaintiff
    17        190 Willis Avenue
    18        Mineola, New York   11501
    18        (516) 747-0300
    19  BY:   RICHARD HOWARD, ESQ.
    19        THOMAS BIANCO, ESQ.
    20
    20
    21  DEBEVOISE & PLIMPTON, LLP
    21  Attorneys for Defendants
    22        919 Third Avenue
    22        New York, New York   10022
    23        (212) 909-6000
    23  BY:   ALISON MIKKOR, ESQ.
    24
    24
    25  DAVID COLODNY, ESQ.
    25  Attorney for Defendants
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                              2
        7airwilm
     1        Urban Justice Center
     1        123 William Street, 16th floor
     2        New York, New York   10038
     2        646-459-3006
     3
     4
     5
                                    Page 1
```

Hearing Transcript 10-18-2007.txt
```
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                        3

    7airwilm
 1            (Case called)
 2            THE CLERK:  Wild Edibles v. Brandworkers.
 3            MR. HOWARD:  For the plaintiff, Richard Howard and
 4   Thomas Bianco, Meltzer, Lippe, Goldstein & Breitstone, 190
 5   Willis Avenue, Mineola.
 6            THE COURT:  Anybody for the defendant?
 7            MS. MIKKOR:  Alison Mikkor of Debevoise & Plimpton.
 8   We have just been retained as pro bono counsel for Mr. Gross
 9   and Brandworkers International.
10            THE COURT:  Have you submitted any papers?
11            MS. MIKKOR:  We have not, your Honor.  We have been
12   just retained actually late last night, so we have not had an
13   opportunity to submit.
14            THE COURT:  This is the return on an order to show
15   cause.
16            MS. MIKKOR:  Yes.
17            THE COURT:  I've read the plaintiff's papers, and I
18   think I'll hear from the defendants.
19            MS. MIKKOR:  As I said, we haven't had a chance yet to
20   submit our own papers.  That being said, we think it is clear
21   on the face of Wild's own submission that their claims are
22   legally deficient and certainly not sufficient to support an
23   application for a preliminary injunction in this matter.
24            As an overview, let me say at the outset that what I
25   think this motion is really all about is an attempt to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                        4

    7airwilm
 1   intimidate Mr. Gross and Brandworkers International from
 2   exercising their First Amendment rights.  Mr. Gross recently
 3   founded Brandworkers as a nonprofit, which is devoted to
 4   workers rights advocacy.
 5            THE COURT:  Let me ask you, if I may, ask you to do
 6   something.  Is it Mikkor?
 7            MS. MIKKOR:  It is, Ms. Mikkor.
 8            THE COURT:  If you turn around, you will see that the
 9   room is filled with people who are interested to hear what you
10   say and what I say and what other people say.  That's one

```
                      Hearing Transcript 10-18-2007.txt
11   reason I talk quite slowly.  You're talking very fast.  I'm an
12   old, tired Judge, and you have to be patient with me.  Speak a
13   little more slowly so that not only I but the people in the
14   courtroom can follow it.
15            MS. MIKKOR:  Yes, your Honor.
16            THE COURT:  Also, we really have to think about what
17   you say, so don't interrupt that process by the words too
18   closely together.
19            MS. MIKKOR:  Let me start again then, your Honor.
20            THE COURT:  Yes.  We have time.
21            MS. MIKKOR:  As an overview, let me say at the outset
22   that I think what this motion is really about --
23            THE COURT:  To intimidate, yes.  I'm not concerned
24   about that.  If they have a legal right to do it, they have a
25   legal right to do it.  If they don't have a legal right to do
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        5
     7airwilm
 1   it, they don't have a legal right to do it.  I'm not concerned
 2   really with their underlying motives and the morality of it.
 3            MS. MIKKOR:  Fair enough, your Honor.  So let's move
 4   on to the underlying merits of their case, which I think are
 5   actually quite weak.  I'm speaking here not only about the
 6   application for preliminary injunction but also of the
 7   underlying complaint itself.
 8            Wild's primary cause of action in that underlying
 9   complaint is a vague allegation that in some way my clients
10   have violated the antitrust laws.  I'm a little confounded by
11   their papers, because, quite frankly, Wild hasn't even tried to
12   articulate which specific provision of the antitrust laws have
13   been violated or any theory of how they have been violated.
14            More importantly, I think this simply is not an
15   antitrust case.  There is established precedent squarely on
16   point which establishes that First Amendment protected
17   noneconomic political activity of the type at issue here simply
18   can't give rise to an antitrust claim.
19            The Eighth Circuit held in Missouri v. National
20   Organization for Women, which is reported at 620 F.2d 1301, an
21   Eighth Circuit case from 1980, that federal antitrust laws did
22   not apply to a boycott which was organized by the National
23   Organization for Women against certain businesses located in
24   states which had elected not to ratify the Equal Rights
25   Amendment.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        6
     7airwilm
 1            There the court was very clear.  It held that a
 2   politically motivated but economically tooled boycott
 3   participated in and organized by noncompetitors of those who
 4   suffered as a result of the boycott does not violate the
 5   antitrust laws.
 6            That is precisely the situation we are in here.
 7   Neither Mr. Gross nor Brandworkers International is a
 8   competitor of Wild Edibles.  Their speech is clearly directed
 9   at political change, bringing attention to workers' conditions
10   in the city, and there is no there there to the antitrust
11   claim.
12            I'd also note that the court in Missouri v. NOW
13   explicitly held that an advocacy group's boycotting activities
14   are privileged on the basis of the First Amendment right to
15   petition even where that right interferes with or has
                                  Page 3
```

```
                    Hearing Transcript 10-18-2007.txt
16       commercial effect such as trade restraints.
17                 In a parallel case, the Supreme Court also held, in
18       NAACP v. Claiborne Hardware Company, reported at 458 U.S. 886,
19       that speech of the type that Mr. Gross and his organization
20       engaged in is protected by the First Amendment and not subject
21       to state tort law claims.
22                 The court there held that advocacy groups such as
23       Brandworkers cannot be held liable in state tort law for
24       nonviolent economic boycotts designed to achieve political
25       goals.  They clearly state that the boycott involved
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                        7
         7airwilm
 1       constitutionally protected activity.  If you look at the type
 2       of activity that Mr. Gross and band workers has been involved
 3       in, it's classic, pure speech.
 4                 I would note that the antitrust claim is also the only
 5       federal claim which the plaintiffs have brought in this action.
 6       It is our fairly strong feeling the antitrust claim is
 7       meritless, and at that point the rest of the case really falls
 8       away.  There is no diversity jurisdiction here, as all the
 9       parties are New York residents.
10                 Daniel Gross is a resident of New York.  He just
11       recently incorporated Brandworkers International as a
12       not-for-profit in the State of New York.  Those papers are
13       currently pending.  And Wild Edibles is a resident corporation
14       based in New York and active in the greater metropolitan area
15       here.
16                 Given those fatal deficiencies in the plaintiff's
17       antitrust claim, we really don't think the Court needs to look
18       any further to deny Wild Edibles' application.  However, even
19       if the plaintiffs have brought suit properly in this court,
20       they can't show likelihood of success on the merits on the
21       other claims on which they base their motion.
22                 They have brought three other claims in the underlying
23       complaint, one for tortious interference under state law, one
24       for defamation also under state law, and then an odd claim,
25       which I have to admit some confusion over, which seems to be
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                        8
         7airwilm
 1       predicated on an allegation that the defendants engaged in what
 2       would be an improper secondary boycott if the defendants were a
 3       labor organization.
 4                 In the current application before the court for
 5       preliminary injunction, plaintiffs only rely on the antitrust
 6       claim.  They don't directly rely on either the defamation or
 7       the secondary boycott claim.  And there there is no tort in the
 8       tortious interference.
 9                 They may feel that Mr. Gross's speech and the
10       activities of Brandworkers have had a negative impact on their
11       business, but more is required for a the tortious interference
12       claim.  They need to show some kind of affirmative wrongdoing
13       by Mr. Gross, and that is entirely lacking in this case.
14                 Instead, as I said before, what we have is classic
15       constitutionally protected speech.  They have not shown that
16       Mr. Gross acted for the sole purpose of harming the plaintiffs.
17       They have not shown that he has used wrongful means.
18                 Instead, what we have is Mr. Gross and Brandworkers
19       working very carefully about advancing their viewpoint on Wild
20       Edibles' business practices through peaceful and entirely
                                     Page 4
```

Hearing Transcript 10-18-2007.txt
```
21  lawful means.  Those consisted of publicizing a lawsuit which
22  was filed with this court, providing a forum where workers
23  could talk about their own experiences.  That is classic
24  speech.  There is no wrongful act there.
25            And that is something that the Supreme Court has
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```
                                                                  9
```
    7airwilm
 1  recognized repeatedly, in two cases, one which I already
 2  mentioned, NAACP v. Claiborne.  The second is Fruit and
 3  Vegetable Packers, reported at 377 U.S. 578.  Both of those
 4  Supreme Court cases are squarely on point.
 5            In NAACP the court held that nonviolent economic
 6  boycotts designed to achieve political goals are protected by
 7  the First Amendment.  They also held that the participants of
 8  those boycotts cannot be held liable under state law on the
 9  First Amendment speech.  I quote the court there:  While states
10  have broad power to regulate economic activity, we do not find
11  a comparable right to prohibit peaceful political activity such
12  as that was found in the boycott in this court.
13            Your Honor, if you wish, I can address the secondary
14  boycott claim if you would like me to, although Wild seems to
15  concede that no such claim can really be advanced against a
16  nonlabor organization and it doesn't appear that they are
17  moving for a preliminary injunction on that basis.  If you
18  would like me to go on, I'm certainly happy to please the Court
19  and do so.
20            THE COURT:  I'm interested to know if you think there
21  is some statute that prevents that.
22            MS. MIKKOR:  Stepping back for a moment, the type of
23  activities the plaintiffs allege that Mr. Gross and
24  Brandworkers engaged in are not a secondary boycott.  The
25  Supreme Court held in NLRB v. Fruit and Vegetable Packers that
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```
                                                                 10
```
    7airwilm
 1  even when a union is involved -- in that case it was a union
 2  picketing grocery stores that were selling fruits and
 3  vegetables.  Sounds familiar.
 4            Here we have an advocacy group which is picketing the
 5  customer of a seafood purveyor.  There, as here, the media feel
 6  that it was directed against the distributor, not the customer,
 7  but they did so in the form that the customers of the
 8  distributor were open to that appeal.  They asked the public to
 9  cease purchasing fruit provided by the distributor.
10            Just as here, Mr. Gross urged some of Wild Edibles'
11  customers not to purchase fish provided by Wild Edibles.  And
12  there the Supreme Court found that this activity, which is
13  virtually identical to the activity here, is protected both as
14  a matter of statutory interpretation and in light of First
15  Amendment concerns.  The Supreme Court protected that activity.
16            If you take a look at the submissions that the
17  plaintiffs put forward here, it's very clear from the press
18  articles that they attached, from the descriptions, that all of
19  the activity was not directed at the restaurant Pastis; rather,
20  it was directed at Wild Edibles.
21            For instance, the Metro newspaper articles that they
22  attached to their pleadings says they alleged Wild Edibles
23  systematically denied overtime pay.  Looking at press coverage
24  of the boycott, again, the signs were directed at Wild Edibles.
25  There is in fact a New York One television piece where you can
```
                            Page 5

Hearing Transcript 10-18-2007.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

7airwilm

1 see that.
2         At the press conference, workers from Wild Edibles
3 spoke about experiences at Wild Edibles, not at Pastis.  They
4 didn't prevent egress or ingress to the customers or workers at
5 Pastis, and they were not interfering with either customers or
6 the restaurant business.
7         THE COURT:  Thank you, Ms. Mikkor.
8         Mr. Howard.
9         MR. HOWARD:  Your Honor, I think the most important
10 point is that no one is seeking to restrict First Amendment
11 rights.  First Amendment rights involve speech.  They do not
12 involve a contract restricting someone from doing business with
13 someone else until an action before this Court is resolved and
14 charges before the NLRB are resolved.
15         THE COURT:  Let me ask you about the action.  I agree
16 with Ms. Mikkor, your complaint has some unusual aspects.  The
17 relief that you seek, among other things, is to set aside the
18 contract between the defendants and Pastis, right?
19         MR. HOWARD:  That's correct, your Honor, that's part
20 of it.
21         THE COURT:  But you don't join Pastis as a defendant
22 or as a party.
23         MR. HOWARD:  No.
24         THE COURT:  And you don't join the IWW, which is a
25 signatory to the agreement as a party.  That rises the
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

7airwilm
1 question:  Does this Court have the necessary parties before
2 it?  You want to set aside a contract between three parties --
3 Pastis, the IWW, and Brandworkers -- and you don't join Pastis
4 and you don't join the IWW.  What about that?
5         MR. HOWARD:  As to the IWW, by the reading of the
6 contract, I saw they signed the contract, but in the initial
7 language they don't say that they are agreeing.  When it says
8 who the agreement is between, it says Brandworkers
9 International and Pastis, however it is pronounced.  It is only
10 subsequently that it says Brandworkers International and the
11 IWW will not continue their demonstrations.
12         THE COURT:  What is Brandworkers?  Is it an agent for
13 IWW?
14         MR. HOWARD:  I don't know for sure, your Honor.  It
15 may well be.  The fact is you asked the question --
16         THE COURT:  If it were, that in itself would bring in
17 IWW, wouldn't it?
18         MR. HOWARD:  I believe it would, certainly.
19         THE COURT:  You don't name IWW as a party.
20         MR. HOWARD:  But I don't know if they are an agent.
21 The IWW would classify itself I strongly believe as a labor
22 organization.  In fact, in their own newsletter concerning this
23 contract with Pastis, what they said was that Pastis decided to
24 go forth with the agreement in order to avoid the wrath of the
25 union.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

7airwilm
1         THE COURT:  You don't have to be a labor organization
Page 6

```
                    Hearing Transcript 10-18-2007.txt
 2    to be an agent of a labor organization.
 3              MR. HOWARD:  That is certainly true.  What I would
 4    say, your Honor, is you asked a question earlier about whether
 5    there is a statute that would preclude an injunction.
 6    Obviously, the statute is the Norris-LaGuardia Act.  We
 7    understand that.  Therefore, we did not include IWW, because
 8    Brandworkers International is admittedly not a labor
 9    organization.
10              THE COURT:  You think leaving them out gets you around
11    that?
12              MR. HOWARD:  The fact is it is a question of should
13    they be in?  Are they really a party to the contract or did
14    they sign it?  Their name is there, but initially they are not
15    saying they agreed to it.  So I don't know.  That agreement
16    itself is not the classic form of agreement.
17              THE COURT:  So you hope to avoid the Norris-LaGuardia
18    Act by leaving them out, correct?
19              MR. HOWARD:  I have the NLRB questioning exactly what
20    was taking place in that.  They are looking at Brandworkers,
21    saying it's not a labor organization.  So I'm saying they are
22    not a labor organization, let's move forward.
23              THE COURT:  Obviously, my question wasn't clear.  I'll
24    reframe it.
25              MR. HOWARD:  I'm sorry, your Honor.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       14
      7airwilm
 1              THE COURT:  So you hope to avoid the Norris-LaGuardia
 2    Act by leaving out the IWW, is that correct?
 3              MR. HOWARD:  There is an implication or an inference
 4    that I am drawing, your Honor, that it was done in some sort of
 5    subversive manner, and I don't think that is accurate.  I
 6    believe that the IWW was properly left out and therefore the
 7    Norris-LaGuardia Act does not come into play.
 8              THE COURT:  On what rationale?
 9              MR. HOWARD:  Because the IWW, as I said, did not
10    appear to be a party to the contract aside from signing it at
11    the end and a statement in the decretal paragraphs stating that
12    it wouldn't do something.  But when it says who the agreement
13    is between, it says Brandworkers International and Pastis.  It
14    doesn't mention the IWW.
15              So it raised questions as to just whether the IWW was
16    there at all.  That's why they weren't included, because I
17    don't know that they were a party.  Subsequently, I see on this
18    website the newsletter of the IWW saying it is to avoid their
19    wrath.  So subsequently I think maybe they would be a party.  I
20    still don't know, your Honor, in all candor.
21              THE COURT:  You say this action is broad under the
22    antitrust laws.
23              MR. HOWARD:  In part, yes, your Honor.
24              THE COURT:  Excuse me?
25              MR. HOWARD:  In part, yes.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       15
      7airwilm
 1              THE COURT:  It's your basis for jurisdiction.
 2              MR. HOWARD:  Jurisdiction, certainly.  It's the better
 3    place for jurisdiction, yes.
 4              THE COURT:  You have no diversity.
 5              MR. HOWARD:  No.  The only federal is accusation is
 6    antitrust.
                                  Page 7
```

Hearing Transcript 10-18-2007.txt

```
 7              THE COURT:  In presenting this antitrust claim, you
 8    make no reference to any impact on competition, you make no
 9    reference to the competitors, no injury caused by reason of any
10    antitrust violation, and no definition of any relevant market.
11    How can that be a complaint for a violation of the antitrust
12    laws?
13              MR. HOWARD:  Under the notice pleading rules, your
14    Honor, I believe it is clear that the market is the wholesale
15    distribution of fish and seafood, that one considerable client,
16    one customer, which has about five or six different restaurants
17    involved in that agreement is compelled to refrain from
18    purchasing from this customer.  I can provide evidence that
19    that is 5 to 10 percent of that customers business.  If given
20    leave to amend, I would certainly be perfectly willing to
21    include that.  But the contract itself seems to provide the
22    injury.
23              THE COURT:  Doesn't this case grow out of a labor
24    dispute?
25              MR. HOWARD:  Your Honor, I believe everything we have
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        16
      7airwilm
 1    been dealing with here today grows out of a labor dispute.
 2              THE COURT:  Then I'm looking at and will read the
 3    words of the Norris LaGuardia Act.  It's short and I'll read it
 4    in full.
 5              "No court of the United States as defined in this
 6    chapter shall have jurisdiction to issue any restraining order
 7    or temporary or permanent injunction in a case involving or
 8    growing out of a labor dispute except in strict conformity with
 9    the provisions of this chapter, nor shall any such restraining
10    order or temporary or permanent injunction be issued contrary
11    to the public policy declared in this chapter."
12              I am duty-bound to follow the statutes of the United
13    States, and I must say I can't see any ambiguity in this that
14    allows you to bring this claim, which is clearly not an
15    antitrust claim and clearly is a labor dispute claim.
16              MR. HOWARD:  Your Honor, if it was a labor dispute
17    claim, the Brandworkers International would be a labor
18    organization, and they're not, as they have said.  If they are
19    a labor organization, then I can go after them on a secondary
20    boycott either for monetary damages under 303 of the Labor
21    Management Relations Act or I can seek 10(j) relief through the
22    National Labor Relations Board.  But they're not a labor
23    organization.
24              THE COURT:  But you cannot get an injunction by
25    pretending this is a suit for interference with beneficial
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        17
      7airwilm
 1    contract relations.
 2              MR. HOWARD:  With all respect, it is, your Honor.
 3              THE COURT:  Every antitrust violation is an
 4    interference with beneficial contract relations.  This is a
 5    sham pleading.
 6              MR. HOWARD:  Your Honor, with all due respect, it
 7    truly is not.  The reality is that this entity Brandworkers
 8    International has conducted this coercion of the neutral,
 9    Pastis, to stop them from doing business with my client, Wild
10    Edibles, by trying to convince the public not to do business
11    with Pastis, which would be the classic secondary boycott under
                                  Page 8
```

```
                       Hearing Transcript 10-18-2007.txt
12      the NLRA.
13                THE COURT:    Indeed it would.
14                MR. HOWARD:    But they are not a labor organization.
15                THE COURT:    As you say, this whole thing grows out of
16      a labor dispute.
17                MR. HOWARD:    But if they are not a labor organization,
18      then they are not engaged in a labor dispute.
19                THE COURT:    They are the agent of a labor
20      organization.
21                MR. HOWARD:    If that is the finding, that they are the
22      agent of a labor organization, then I can't disagree with your
23      Honor.  If that is the finding, that they are acting as the
24      agent of a labor organization, I can accept that, your Honor.
25                THE COURT:    You cannot look at the facts in this
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                         18
        7airwilm
 1      matter and conclude otherwise.
 2                MR. HOWARD:    Somehow, the regional director of the
 3      NLRB seems to be able to.
 4                THE COURT:    Then you belong before the NLRB.  But this
 5      complaint, it isn't a question of it can't fly.  It can't even
 6      taxi to the end of the runway in terms of getting an
 7      injunction.  You may have other remedies, you may have a
 8      damages remedy, but you don't have an antitrust remedy pleaded
 9      or visible on these facts.
10                MR. HOWARD:    Your Honor, I will be very happy to
11      withdraw the application for the preliminary injunction and ask
12      for the opportunity to amend the complaint to include a 303
13      violation based upon Brandworkers International being an agent
14      of the International Workers of the World and seek monetary
15      damages on that basis.
16                THE COURT:    Then we can determine whether they are in
17      fact or not an agent.  That's the proper way to do it.
18                MR. HOWARD:    While we are determining that, my client
19      may be out of business.  But that's the way it goes.
20                THE COURT:    I've already read the words of the statute
21      by which I am bound.
22                MR. HOWARD:    I understand, your Honor.  I appreciate
23      it.  Thank you.
24                THE COURT:    The complaint is dismissed with leave to
25      replead.
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                         19
        7airwilm
 1                MR. HOWARD:    Thank you, your Honor.
 2                THE COURT:    And at the same time to join the proper
 3      party as you determine whether they are necessary or not.
 4                Anything else?
 5                MR. HOWARD:    I think that does it, Judge.
 6                THE COURT:    That works out very nicely, because there
 7      is another judge on another case that wants to use the
 8      courtroom at 4 o'clock.
 9                (Adjourned)
10
11
12
13
14
15
16
                                     Page 9
```

Hearing Transcript 10-18-2007.txt
17
18
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300