# EXHIBIT "A"

Proposed
Collective Bargaining Agreement

Between

Industrial Workers of the World

and

Wild Edibles, Inc.

Effective [date]

## AGREEMENT

THIS AGREEMENT, made this [date] between Wild Edibles, Inc. (hereinafter referred to as the "Company" or "Employer") and the Industrial Workers of the World.

### W I T N E S S E T H

### ARTICLE 1 - UNION RECOGNITION

A.  The Company recognizes the Industrial Workers of the World, its affiliated Unions and Branches, ("Union") as the sole collective bargaining agent for hours, wages, and other conditions of employment for all full-time and regular part-time employees in the Employer's wholesale facility, but excluding all other employees, including drivers, managerial, professional employees, guards and supervisors as defined in the Act.

B.  Supervisors shall not perform bargaining unit work except when training or in emergencies (including the unavailability of qualified bargaining unit employees) beyond the control of the Company.

### ARTICLE 2 - UNION SECURITY

A.  The Company agrees that all Employees included in the bargaining unit who are not members of the Union at the time this Agreement becomes effective shall become members of the Union on or before the thirtieth (30th) calendar day following the effective date of this Agreement, or the thirty-first (31st) calendar day of employment, whichever is later, and shall remain members in good standing of the Union for the term of this Agreement. Membership in good standing shall be satisfied by payment of an initiation fee and membership dues uniformly required as a condition of acquiring or retaining membership in the Union, and compliance with the Constitution, regulations, and principles of the Union.

B.  The failure of any such Employee to become and remain a member of the Union at and after the required time shall obligate the Company, upon written notice from the Union, promptly to discharge such person.

### ARTICLE 3 - DISCHARGE OR DISCIPLINE

There shall be no discipline or termination without just cause. For a first offense, an Employee shall receive an oral reprimand. For a second offense within any twelve-month period, an Employee may receive a written reprimand. For a third offense within any twelve-month period, an Employee may be suspended without pay for up to one week. For a fourth offense within any twelve-month period, an Employee may be discharged.

All written reprimands or references to verbal reprimands shall be expunged from each Employee's personnel record after twelve months.

Notwithstanding any provision above, the following conduct shall be considered just cause for termination provided that the violations are established after due process:

1) A worker failing to report for work on three occassions in any twelve moonth period without calling in provided he received a written warning for each offense at the time it was commited; or

2) One incident of theft of employer property valued in excess of $25 each incident; or

3) One incident of physical violence except for lawful self-defense; or

3) Two incidents of drunkeness provided that the worker received a written warning for each offense; or

4) Once incident of on-the-job conduct resulting in a felony conviction; or

5) A worker refusing to carry out safe, lawful, and job category-appropriate work instructions on three occassions in any twelve-month period provided he received a written warning for each offense at the time it was committed.

2

## ARTICLE 4 – UNION RIGHTS

A. Union representatives shall at all reasonable times have access to any place where Employees work for the purposes of safety inspection, dues collection, distribution of Union literature and information, investigation of grievances or disciplinary matters, and the enforcement of this contract; provided, however, that such Union representatives shall identify themselves to management upon entering upon Employer's property, and shall not unnecessarily disrupt the conduct of Employer's business.

B. Union shall have the right to erect a bulletin board in the Employees' break area, or in some other readily accessible, visible, and unobstructed place. Union may post on such bulletin board any notice, information, decoration, or other matter, provided that no defamatory or obscene matter shall be posted thereon. Employer shall neither post any matter on such bulletin board nor remove anything from it.

C. No Employee shall be required to cross any bona fide picket line.

## ARTICLE 5 – VACATION

A. Past practices prevail – one week at regular rate of pay for first year of service. Two weeks at regular rate of pay each year thereafter.

## ARTICLE 6 - HOLIDAYS

All Unit employees after six months will receive the following holidays paid at a full day's rate of pay:

| | |
|---|---|
| New Year's Day | Independence Day |
| Easter Day | Christmas Day |
| Thanksgiving Day | 3 Floating Days Chosen by Employee |

A. Employees who volunteer to work on a holiday shall receive regular time for all the hours worked plus eight hours holiday pay at 1 ½ time rate.

B. In the event a holiday falls on an employee's vacation, the Employer shall have the option of paying the employee his/her holiday pay or giving the employee an extra day off.

C. Holidays shall be observed on the actual day they fall, even if on Saturday or Sunday.

3

D.  In addition to the holidays listed above, the Employer grants six (6) personal days or sick days after six months of service. Days can be carried over from one year to the next up to a maximum of four and must be scheduled in accordance with procedures established by the Employer.

## ARTICLE 7 - GRIEVANCE PROCEDURE

A.  Should any grievance arise over the interpretation, application or alleged violation of any of the provisions of this Agreement, the grievance shall be processed by the following grievance procedure:

Step 1: An employee may take up a grievance verbally with his/her supervisor no later than five (5) working days after the event which gave rise to the grievance was known.

Step 2: If the grievance is not settled under *Step 1*, it may be reduced to writing no later than fourteen (14) working days after the event which gave rise to the grievance was known. The grievance shall be discussed in a meeting between the employee, an employee union representative and a designated representative of the Company within five (5) days of receipt of the written grievance. The Company shall render a decision within five (5) working days after the *Step 2* meeting.

Step 3: If the grievance is not settled under *Step 2*, the Union may request another meeting with the Company at which an official Union representative outside of the company will be present. The Union may request such a meeting within 7 (seven) working days after receipt of the Company response in *Step 2*. The Company shall render a written decision within seven (7) days after the *Step 3* meeting.

Step 4: In the event that a grievance is not settled by the above procedures, it may be submitted, within no more than sixty (60) days from the date the grievance was submitted in writing under *Step 2*, to Community Mediation Services Inc., for the selection of a mediator mutually agreed upon by the parties.

B.  All meetings described in this Article shall be on working time unless otherwise agreed to by the parties.

C.  Time limits herein may be extended only by written agreement.

D.  The Union and Employer shall not take adverse action against one another before exhausting all steps.

4

## ARTICLE 8 - HEALTH AND WELFARE BENEFIT

The Company shall enroll all eligible warehouse employees in the "CIGNA HealthCare of New York, Inc. – Wild Edibles, Inc." health insurance plan. Warehouse employees shall become eligible for health care coverage three months after their start date. The Health and Welfare Benefit in this Article shall become operative one year after ratification.

## ARTICLE 9 – 401k PLAN

Bargaining unit members will participate in the Company's 401(k) plan and the Company will match employee's contribution 100% up to 3% of salary.

## ARTICLE 10 - HOURS OF WORK

A.  The work week for warehouse employees shall be forty-eight (48) hours after deducting lunch periods. The work week shall be no more than (6) days in seven (7). Time-and-one-half (1-1/2x) shall be paid for hours worked over forty (40) in a week. Sunday shall be a day off.

B.  Employees shall be entitled to two (2) paid fifteen (15) minute breaks per day in addition to a forty-five (45) minute unpaid lunch period. The lunch period shall be somewhere around the middle of the shift.

## ARTICLE 11 - UNION LEAVE

Upon thirty days' written notice from the Union, any Employee may take unpaid, short-term union leave for up to thirty days. During short-term union leave, management personnel may perform such Employee's work. No Employee shall take more than two such leaves per year. Upon sixty days' written notice from the Union, any Employee may take unpaid, long-term union leave for up to one year. During union leave, Employees shall continue to accrue benefits, including vacation time, and at the end of such leave shall be restored to their former positions without loss of seniority.

5

## ARTICLE 12 - LAYOFFS

No Employee shall be laid off for economic reasons unless Employer proves to the Union that such action is necessary. The Employees shall have the option of distributing the available work among all Employees in lieu of a layoff, if that can be done without unduly disrupting Employer's business. If a layoff is necessary, Employees shall be laid off in reverse order of seniority, and shall be recalled in order of seniority. Any Employee to be laid off shall be given two weeks' notice or two weeks' pay, including normal overtime, in lieu of notice. While any Employee is laid off, Employer shall hire no new personnel, and no Employee shall work overtime.

## ARTICLE 13 - SAVING CLAUSE

If any term or provision of this Agreement is, at any time during the life of this Agreement, in conflict with federal, state or municipal law such term or provision shall continue in effect only to the extent permitted by such law unless its continuance would produce a result contrary to the intent of the parties. The parties will meet and discuss any illegal provision in an effort to modify the Agreement to the extent necessary to lawfully achieve the parties intent.

This Agreement shall become effective following notice to the Employer of ratification and shall continue in full force and effect through [date] and shall continue thereafter until terminated by either party on sixty (60) days notice to the other party.

## ARTICLE 14 - SUCCESSORS

This agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation, or any part thereof is sold, or taken over by sale, receivership or bankruptcy proceedings, the operation shall continue to be subject to the terms and conditions of the agreement for the life thereof.

The Employer shall give notice of the existence of this agreement to the purchaser, assignee, etc. of the operation or part thereof covered by this agreement.

6

Such notice shall be in writing, with a copy given to the Union, no later than the effective date of the sale.

### ARTICLE 15 - AMENDMENTS

No amendment shall be made to this agreement except in writing, signed by both parties.

### ARTICLE 18 - CONTRACT TERM

This agreement shall be in force until 12/31/2010.

### ARTICLE 19 - PAST PRACTICES

All past practices and customs heretofore in force between Employer and Employees shall remain in force unless expressly revoked or contradicted by this agreement.

### ARTICLE 20 - MATTERS NOT COVERED

Any matter not specifically covered by this agreement shall remain subject to future negotiations.

### ARTICLE 21 - SEVERABILITY

If any part of this agreement be determined by a court of competent jurisdiction to be unenforceable or illegal, all other parts hereof shall remain in force.

### ARTICLE 22 - DUPLICATE ORIGINALS

This agreement is being executed simultaneously in English and Spanish versions. In the event of conflict among the translations, the English version shall govern.

### ARTICLE 23 - NOTICES

Notice to Employer required under this agreement shall be sufficient if sent by certified mail or express courier, to

> Wild Edibles, Inc.
> 2151 Borden Avenue
> Long Island City, NY 11101

or transmitted by facsimile to 718-433-4621 with a copy sent by regular mail to the address above.

7

Notices to Union required under this agreement shall be sufficient if sent by certified mail or express courier to

> Industrial Workers of the World
> IWW IU460-640
> 4461 11th St. Floor #3
> Long Island City, NY 11101
> Attn: Branch Secretary

or transmitted by facsimile to (718) 609-6408 with a copy sent by regular mail to the address above.

Either party may change the address to which notices to it are to be sent by sending written notice of the change as provided herein.

**Wild Edibles, Inc.**                  **Industrial Workers of the World**

_____                  _____
[NAME]                                  [NAME]


_____                  _____
TITLE                                   TITLE


_____                  _____
Date                                    Date

8

## SCHEDULE A

### CLASSIFICATIONS AND MINIMUM WAGES

| Classification | Ratification | 01/01/09 | 01/01/10 |
|---|---|---|---|
| Porter | $10.00 | $10.50 | $11 |
| Picker | $11 | $11.50 | $12 |
| Filet | $12 | $12.50 | $13.00 |

9

# NEUTRALITY AGREEMENT

### Regarding Neutrality and Card Check Recognition
between
Industrial Workers of the World
and
Wild Edibles, Inc.

Wild Edibles, Inc., its subsidiaries, its affiliates, and its successors ("Employer") and the Industrial Workers of the World ("Union"), its branches, its affiliates and its successors, for and in consideration of the mutual promises and agreements set forth below, hereby enter into this Memorandum of Agreement Regarding Neutrality and Card Check Recognition ("Agreement").

The parties share the mutual goal of allowing employees to decide on union membership without a damaging campaign. Therefore, the Employer and the Union agree to the following terms concerning the conduct of organizing programs involving certain of the employer's non-union facilities defined below, recognition of the Union as the exclusive collective bargaining representative for unit employees of those facilities and negotiation of collective bargaining agreements covering those employees.

1. **Facilities Covered.** This Agreement applies to all the facilities of the Employer, except for the warehouse unit covered by a collective bargaining unit.

2. **Neutrality.** The Employer will not by word or deed disparage the Union, or communicate to unit employees that the Employer disfavors support for the Union or the signing of authorization cards, or that employees will suffer adverse consequences for those activities, or otherwise hinder the Union's legitimate organizing activities. The Employer will inform all managerial employees and supervisors of their obligations under this Agreement and that the employer has no objections to unit employees supporting the Union or engaging in Union activities, including meeting with Union representatives or signing authorization cards. The Employer will take prompt action to stop and correct any violations of this Agreement and will discipline any managerial or supervisory employees who violate their obligations under this Agreement.

   The Union will not by word or deed disparage the Employer or engage in protesting, picketing, or leafleting against the employer.

3. **Access to Facilities and Employees.** The Employer recognizes that neutrality will not work unless the Union has access to the workers that it seeks to organize, and the Union recognizes that access must accommodate the Employer's concerns and minimize any disruptions of the business. Accordingly, the Employer and the Union agree to the following access provisions:

1

a. The Employer will provide the Union with a current list of names, addresses and phone numbers of all unit employees and will update the list and keep it current during the period in which the Union organizing occurs.

b. The employer will permit Union representatives access to the facility for the purpose of communicating with unit employees about Union representation. The Union representatives will be allowed access during each workday sufficient to communicate with all the workers in the facility. The Union representatives will be permitted to distribute organizing literature to the employees. The communications shall not disrupt the normal business of the facility nor disparage the Employer, its operations or its employees. The Employer will assure that the Union has sufficient opportunities to communicate with each unit employee.

4. **Scope of Bargaining Units.** "Unit Employees" are full and part time facility employees, excluding managers and confidential employees. The following, individually or in groups, constitute appropriate bargaining units:

1) Wholesale facility (Drivers)
2) 3rd Avenue Restaurant and Retail
3) Grand Central Retail
4) Forager's Retail
5) Amish Market Retail
6) Westside

5. **Card Check Recognition.** When the Union presents authorization cards from the majority of eligible employees, the Employer will recognize the designated the Union as the exclusive collective bargaining representative for the employees, and the parties will negotiate in good faith a collective bargaining agreement to cover those workers. Bargaining pursuant to this provision shall commence within fourteen (14) business days from the date the Union presents the Employer with a card majority. Cards acceptable for purposes of this Agreement can be any cards dated after June 15, 2008.

6. **Protection for Associational Rights.** The Employer will not initiate directly or indirectly or incite or support decertification or other efforts to undermine the Union in any facility where the Union has recognition.

7. **Enforcement.** If a court finds that a party has violated this Agreement, it shall award relief that would be appropriate for a contract breach, and shall direct that the breaching party specifically perform the provisions of the Agreement that has been breached. The court shall award liquidated damages of up to $10,000 for willful breaches; a willful breach is one that clearly violated the

Agreement and which was not corrected even after written notice by the aggrieved party.

8. **Scope of Agreement.** Should any portion of this Agreement be voided or held unlawful or unforceable by the National Labor Relations Board or any Court of competent jurisdiction, the remaining provisions shall remain in full force and effect, except as limited above. The conduct of the Employer and the Union during an election drive shall be in compliance with and governed by applicable law.

9. **Duration of Agreement.** The parties' Agreement shall remain in force until four months after execution unless extended in writing through mutual consent.

**ACCEPTED AND AGREED:**

DATED:                                      Industrial Workers of the World

                                            By:_____


DATED:                                      Wild Edibles, Inc.

                                            By:_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILD EDIBLES, INC.,

                Plaintiff,

    v.

INDUSTRIAL WORKERS OF THE WORLD
LOCAL 460/640, BRANDWORKERS
INTERNATIONAL and DANIEL GROSS,

                Defendants.

ECF Case

07 CV 9225 (LLS)

## STIPULATION OF DISMISSAL

IT IS HEREBY STIPULATED AND AGREED, pursuant to Fed. R. Civ. P. 41(a), by and between Meltzer, Lippe, Goldstein & Breitstone, LLP, counsel to Plaintiff Wild Edibles, Inc., and Milbank, Tweed, Hadley & McCloy LLP, counsel to Defendants Brandworkers International and Daniel Gross, that the above-captioned action be dismissed and the same hereby is discontinued with prejudice and without cost to any party as against the other.

Dated:    New York, New York
            June ___, 2008

MELTZER, LIPPE, GOLDSTEIN &       MILBANK, TWEED, HADLEY & McCLOY LLP
BREITSTONE, LLP

By: _____     By: _____
    Richard M. Howard (RMH 2932)          Thomas A. Arena (TA 4613)
190 Willis Avenue                        Robert R. Schriver (RS 6924)
Mineola, New York 11501               One Chase Manhattan Plaza
(516) 747-0300                           New York, NY 10005-1413
                                            (212) 530-5000

*Attorneys for Plaintiff*                 *Attorneys for Defendants*
*Wild Edibles, Inc.*                      *Brandworkers International and Daniel Gross*

| Name | Damages | Liquidated Damages | Total |
|---|---|---|---|
| Cesar Barturen | 22170 | 11085 | 33255 |
| Jason Borges | 2250 | 1125 | 3375 |
| Raul Lara Molina | 6525 | 3262.5 | 9787.5 |
| Miguel Eduardo Tavara | 10564 | 5282 | 15846 |
| Marco Antonio Corona | 6120 | 3060 | 9180 |
| Juan Carlos Molina | 10920 | 5460 | 16380 |
| Julio Cesar Moreno | 900 | 450 | 1350 |
| Pedro Hernandez | 2275 | 1137.5 | 3412.5 |
| Julio Antonio Pena Farfan | 6532 | 3266 | 9798 |
| Julio Carbonel | 9874.8 | 4937.4 | 14812.2 |
| Eusebio Santos Ferrosqullo | 3600 | 1800 | 5400 |
| Lino Martinez | 5625 | 2812.5 | 8437.5 |
| Juan Jose Pena Farfan | 11960 | 5980 | 17940 |
| Jose Fernandez | 15619.5 | 7809.75 | 23429.25 |
| Jorge Legis Cuyate | 5580 | 2790 | 8370 |
| Luis Carbonel | 16500 | 8250 | 24750 |
| Pablo Reyes | 180 | 90 | 270 |
| Orlando Rios | 12000 | 6000 | 18000 |
| Agostin Meza | 12595 | 6297.5 | 18892.5 |
| Severo Javier Mayanga | 5640 | 2820 | 8460 |
| William Lopez | 15680 | 7840 | 23520 |
| Total | 183110.3 | 91555.15 | 274665.45 |
| Attorney's Fees | ??? | | |

# SOCIAL RESPONSIBILITY LEADERSHIP AGREEMENT

Brandworkers International and Wild Edibles, Inc. hereby enter into the following agreement in consideration of the mutual promises below:

Whereas Brandworkers International was engaged by Wild Edibles employees for assistance in asserting their workplace rights under federal, state, and international law; and

Whereas Wild Edibles entering into a global settlement agreement to resolve the current labor dispute would represent a vindication of those rights; and

Whereas Wild Edibles desires to position itself as a leader in social responsibility as well as product quality; and

Whereas Wild Edibles is entitled to an end to Brandworkers' public awareness campaign once global settlement is achieved; THEREFORE BE IT RESOLVED THAT

Brandworkers International and Wild Edibles Inc. agree not to communicate critical messages regarding one another while the FLSA settlement agreement, the NLRB settlement agreement, or the CBA are in effect.

AGREED AND ACCEPTED:                        AGREED AND ACCEPTED:


_____              _____
Daniel Gross                                Richard Martin
Executive Director                          Owner
Brandworkers International                  Wild Edibles, Inc.

Date:                                       Date: