Thomas A. Arena (TA-4613)
Robert R. Schriver (RS-6924)
Elizabeth M. Virga (EV-1125)
MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

David A. Colodny (DC-4234)
URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, NY 10038
(646) 602-5600

*Co-counsel for Defendants Brandworkers International and Daniel Gross.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WILD EDIBLES, INC.,

                Plaintiff,

      -against-

INDUSTRIAL WORKERS OF THE WORLD
LOCAL 460/640, BRANDWORKERS
INTERNATIONAL, and DANIEL GROSS,

                Defendants.

**ECF CASE**

No. 07 Civ. 9225 (LLS)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**BRANDWORKERS INTERNATIONAL AND DANIEL GROSS'**
**MOTION TO DISMISS WILD EDIBLES, INC.'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT .................................................................................................... 2

I.      THIS COURT SHOULD ONLY CONSIDER THE ALLEGATIONS IN THE AMENDED COMPLAINT TO DECIDE THE MOTION TO DISMISS ........................ 2

      A.      The Court Should Not Consider The Affidavit ........................................ 2

      B.      Wild Edibles May Not Incorporate By Reference A Complaint Filed In Another Case To Repair The Deficiencies In Its Own Complaint ........................ 2

      C.      Wild Edibles Cannot Amend Its Pleading By Raising New Issues And Claims In Its Brief ................................................................................ 3

II.      WILD EDIBLES' CLAIMS SHOULD BE DISMISSED BECAUSE THE ALLEGED CONDUCT BY THE ADVOCACY DEFENDANTS IS PROTECTED FREE SPEECH UNDER THE FIRST AMENDMENT ........................... 3

III.      WILD EDIBLES HAS FAILED TO ADEQUATELY PLEAD A VIOLATION OF RICO UNDER 18 U.S.C. §§ 1962(C) & (D) ................................................ 5

      A.      Wild Edibles Has Failed Adequately To Plead Claims Under § 1962(c) ............... 5

            1.      Wild Edibles Has Failed Adequately To Plead A Pattern Of Racketeering Activity ................................................................ 5

            2.      Wild Edibles Has Failed Adequately To Plead The Existence Of Either The "Extortion Enterprise" Or The "IWW Enterprise" ................. 7

            3.      Wild Edibles Has Failed To Allege The Requisite Impact On Interstate Commerce ......................................................... 8

      B.      Wild Edibles Has Failed To Adequately Plead The Existence Of A RICO Conspiracy Under § 1962(d) ..................................................... 9

IV.      WILD EDIBLES HAS FAILED TO ALLEGE A CLAIM PURSUANT TO SECTION 303 OF THE LMRA .............................................................. 9

      A.      Wild Edibles' Allegations That Daniel Gross Is An Agent Of IWW And Brandworkers Are Insufficient To Subject Him To Section 303 Liability ............. 9

B.      Wild Edibles Does Not Sufficiently Allege That Brandworkers
International Is A "Labor Organization" Under The LMRA ................................ 12

C.      Wild Edibles' Failure to Pleading of Secondary Boycott Activity, Not
Addressed In Its Response Brief, Warrants Dismissal ........................................... 13

V.      WILD EDIBLES' CLAIM FOR TORTIOUS INTERFERENCE WITH
PROSPECTIVE BUSINESS RELATIONS SHOULD BE DISMISSED ........................ 14

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Advance Relocation & Storage Co. v. Local 814, Int'l Brotherhood of Teamsters,*
    *AFL-CIO*, No. 03-CV-4475, 2005 WL 665119, (E.D.N.Y. Mar. 22, 2005) .......................... 7

*Big Apple Supermarkets, Inc. v. Dutto*,
    237 F. Supp. 774 (E.D.N.Y. 1965) .................................................................................. 14

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004) ........................................................................................................ 14

*Connolly v. Havens*,
    763 F. Supp. 6 (S.D.N.Y. 1991) ........................................................................................ 9

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005) ............................................................................ 3, 9

*Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union Local 680,*
    *Intern. Broth. of Teamsters,*
    *AFL-CIO*, 956 F. Supp. 1190 (D.N.J. 1997) .................................................................... 11

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) .............................................................................................. 8

*Global Network Commc'ns, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006) .............................................................................................. 2

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) ....................................................................................................... 5, 6

*In re Livent, Inc. Noteholders Secs. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ............................................................................ 3, 9

*Kerry Coal Co. v. United Mine Workers of Am.*,
    637 F.2d 957 (3d Cir. 1981) ............................................................................................ 11

*Lazaro v. Good Samaritan Hosp.*,
    54 F. Supp. 2d 180 (S.D.N.Y. 1999) .............................................................................. 3, 9

*Lovell v. City of Griffin*,
    303 U.S. 452 (1938) .......................................................................................................... 4

*Mario & DiBono Plastering Co. v. Metallic Lathers Union of N.Y. & Vicinity*,
    No. 75-4075, 1976 WL 1619 (S.D.N.Y. Mar. 8, 1976) .................................................... 11

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) .............................................................................................. 7

*NAACP v. Claiborne*,
    458 U.S. 886 (1982) .......................................................................................................... 4

*Naso v. Park*,
    850 F. Supp. 264 (S.D.N.Y. 1994) .................................................................................... 9

*NLRB v. Fruit & Vegetable Packers Local 760*,
    377 U.S. 58 (1964) .......................................................................................................... 13

*NLRB v. Peninsula Gen. Hosp. Med. Center,*
    36 F.3d 1262 (4th Cir. 1994) ............................................................................ 13

*Scheidler v. NOW,*
    537 U.S. 393 (2003) ............................................................................................ 6

*SMJ Group Inc. v. 417 Lafeyette Rest. LLC,*
    2006 WL 2516519 (Aug. 30, 2006) .................................................................... 4

*Spool v. World Child Int'l Adoption Agency,*
    520 F. 3d 178, 184 (2d Cir. 2008) ...................................................................... 5

*Tavakoli-Azar v. Crescent Mgmt., Inc.,*
    No. 97 Civ. 0696, 1998 WL 426733 (S.D.N.Y. July 28, 1998) ........................... 8

*Thornhill v. Alabama,*
    310 U.S. 88 (1940) ............................................................................................. 4

*Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre,*
    647 F. 2d 372 (1981) ......................................................................................... 11

## STATUTES AND RULES

18 U.S.C. § 1343 ....................................................................................................... 7

18 U.S.C. §§ 1962(c) & (d) ................................................................................... 5, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1

Fed. R. Civ. P. 9(b) .................................................................................................... 7

Fed. R. Evid. 408(a) ................................................................................................ 13

Defendants Brandworkers International ("Brandworkers") and Daniel Gross (collectively, the "Advocacy Defendants"), by their attorneys Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP and the Urban Justice Center, respectfully submit this reply memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Rather than argue that the Amended Complaint adequately alleges a cause of action against the Advocacy Defendants, plaintiff Wild Edibles, Inc. ("Wild Edibles") admits that the Amended Complaint may be deficient[1] and instead takes a novel tack. Throughout its brief, Wild Edibles does not rely on the factual allegations in the Amended Complaint (as it must), but instead attempts to create a factual record by submitting an "Affidavit in Opposition," dated June 23, 2008 (Docket No. 23) (the "Affidavit"), consisting of statements made, not by any member of Wild Edibles, but by its counsel, attaching various exhibits. In fact, the Wild Edibles brief cites to the Amended Complaint not once in its 12 pages. Wild Edibles' attempt to introduce new factual allegations through another, untimely document (and also through its brief) is improper, and the Affidavit should be stricken in its entirety.

Even if this Court were to consider the allegations that Wild Edibles attempts to tack on to the Amended Complaint – allegations submitted solely in response to the Advocacy Defendants' Motion to Dismiss – Wild Edibles' brief fails to rebut the arguments in the Advocacy Defendants' opening brief showing that the Amended Complaint should be dismissed. Indeed, Wild Edibles simply concedes many of the arguments made in the Advocacy Defendant's Memorandum Of Law In Support Of Their Motion To Dismiss Wild Edibles, Inc.'s Amended Complaint, dated May 23, 2008 (Docket No. 17) (the "Opening Brief"). Because Wild

---

[1] *See* Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss, dated June 23, 2008 (Docket No. 21) (the "Response Br.") at 1 ("Some further amendment of the pleading may be advisable . . . .").

Edibles has failed to establish that the Amended Complaint states any valid cause of action, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

## I.    THIS COURT SHOULD ONLY CONSIDER THE ALLEGATIONS IN THE AMENDED COMPLAINT TO DECIDE THE MOTION TO DISMISS

Wild Edibles' attempts to shore up the deficiencies in the Amended Complaint by attaching an affidavit from Wild Edibles' counsel, by referencing a complaint filed by a party in another litigation, and by raising new factual issues – nowhere pleaded in the Amended Complaint – in its opposition memorandum of law. Each of these stratagems should be rejected, and the Court should evaluate the Amended Complaint on its own terms.

### A.    The Court Should Not Consider The Affidavit

In deciding a motion to dismiss under Rule 12(b)(6), a district court is generally limited to four corners of the complaint; to consider any material extraneous to the complaint, such material must either be "integral" to the Amended Complaint or "an appropriate subject for judicial notice." *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156-57 (2d Cir. 2006). The Affidavit is neither. Accordingly, the Court should not consider the Affidavit in assessing whether the Amended Complaint adequately pleads claims for relief.[2]

### B.    Wild Edibles May Not Incorporate By Reference A Complaint Filed In Another Case To Repair The Deficiencies In Its Own Complaint

Nor can the Court look to a complaint filed in another case, as Wild Edibles suggests, to establish that Wild Edibles has pleaded certain necessary elements. For example, the Advocacy Defendants argued in the Opening Brief that the Amended Complaint fails to adequately plead the required nexus to interstate commerce to sustain a RICO claim. *See*

---

[2]    At any rate, the Affidavit contains only allegations that are not based on first-hand knowledge and therefore are inadmissible hearsay.

Opening Brief at 17.  In response, Wild Edibles does not point to any allegation in the Amended

Complaint, but instead invites the Court to consider a complaint filed against it by the National

Labor Relations Board.  *See id.* at 4 ("Plaintiff asks the Court to take judicial notice of the

Complaint issued against Wild Edibles by the National Labor Relations Board . . . which

specifically asserted such an impact upon interstate commerce.").  Wild Edibles may not make

up for the insufficient pleadings in the Amended Complaint by attempting to incorporate by

reference someone else's complaint filed in another case.

      **C.**    **Wild Edibles Cannot Amend Its Pleading By Raising New Issues And Claims In Its Brief**

      Wild Edibles also raises new factual issues and makes new claims for relief in its

brief, such as its contention that its factual allegations suffice to state a claim for "wire fraud" as

a RICO predicate act.  *See* Response Br. at 9-10.  Wild Edibles cannot attempt to amend its

complaint through a brief in response to a motion to dismiss.  *See, e.g.*, *Fadem v. Ford Motor*

*Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long standing precedent in this circuit that

parties cannot amend their pleadings through issues raised solely in their briefs."); *In re Livent,*

*Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001) ("The complaint cannot,

of course, be amended by the briefs in opposition to a motion to dismiss."); *Lazaro v. Good*

*Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (same).  In deciding the motion to

dismiss, the Court should rely only on the Amended Complaint and should disregard any claims

or allegations asserted for the first time in the Wild Edibles Brief.

**II.**    **WILD EDIBLES' CLAIMS SHOULD BE DISMISSED BECAUSE THE ALLEGED CONDUCT BY THE ADVOCACY DEFENDANTS IS PROTECTED FREE SPEECH UNDER THE FIRST AMENDMENT**

      Wild Edibles does not address the Advocacy Defendants' contention that their

conduct, as alleged in the Amended Complaint, consists of activities long protected by the First

Amendment.  *See* Opening Brief at 29 (citing *NAACP v. Claiborne,* 458 U.S. 886, 910-11 (1982)

(organized non-violent boycotts, picketing and encouraging citizens to avoid patronizing certain

establishments were protected First Amendment activities and, therefore, not actionable);

*Thornhill v. Alabama,* 310 U.S. 88 (1940) (peaceful picketing is entitled to constitutional

protection even when the purpose of that picketing is to encourage customers (and prospective

customers) not to patronize a particular employer); *see also Lovell v. City of Griffin*, 303 U.S.

452 (1938) ("[The First Amendment] necessarily embraces pamphlets and leaflets.  These indeed

have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and

others in our own history abundantly attest.")).

        Nor does Wild Edibles attempt to address, let alone distinguish, *SMJ Group Inc.*

*v. 417 Lafayette Restaurant LLC*, 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y Aug. 30, 2006) – a

case with similar facts in which Judge Lynch held that leafleting and picketing were "among our

nations' most cherished and protected expressive activities" protected by the First Amendment.

*See id.* at *7.  Indeed, Judge Lynch held that a tortious interference claim asserted by the plaintiff

was viable only to the extent that the plaintiff could establish that the defendants had infringed

the plaintiff's trademark – an issue that does not exist in this case.  *See id.*  As a result, the

Advocacy Defendants' alleged conduct of leafleting in a public forum is a constitutionally

protected expressive activity that cannot form the basis for a claim under federal or state law.

The Amended Complaint should therefore be dismissed on this basis alone.

III.    **WILD EDIBLES HAS FAILED TO ADEQUATELY PLEAD A
VIOLATION OF RICO UNDER 18 U.S.C. §§ 1962(C) & (D)Error!
Bookmark not defined.**

A.    **Wild Edibles Has Failed Adequately To Plead Claims Under § 1962(c)**

1.    **Wild Edibles Has Failed Adequately To Plead A Pattern Of
Racketeering Activity**

a.    **The Amended Complaint Fails To Allege The Required
"Continuity"**

In their opening brief, the Advocacy Defendants established that the Amended

Complaint failed to allege either closed-ended or open-ended continuity; the only predicate acts

identified in the Amended Complaint were purported violations of the Hobbs Act on two

occasions in September and October 1997.  Wild Edibles has not rebutted the Advocacy

Defendants' contention that alleged conduction of such short duration cannot satisfy the

continuity requirement under RICO.  *See, e.g., H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S.

229, 242 (1989) (close-ended continuity is shown by "a series of related predicates extending

over a substantial period of time"); *see also Spool v. World Child Int'l Adoption Agency*, 520

F.3d 178, 184 (2d Cir. 2008) ("[I]t will be rare that conduct persisting for [less than two years]

establishes closed-ended continuity, particularly where . . . the activities alleged involved only a

handful of participants.").

Rather than cite to any allegations in the Amended Complaint to refute the

Advocacy Defendants' argument, Wild Edibles argues for the first time in its Response Brief that

the "IWW's own web site makes that [continuity] abundantly clear" because "[i]t has been

ongoing for three (3) years."  Response Br. at 11.  Although the Response Brief provides no

explanation of what the "it" is in the preceding sentence, Wild Edibles appears to argue that it

might be able to establish "close-ended" continuity because the IWW has allegedly been

involved with Wild Edibles' business for three years.[3]  *See* Response Br. at 3.  IWW, however, is

not a party to this motion, and the only specific allegations of racketeering in the Amended

Complaint pertaining to the Advocacy Defendants purport to describe two extortions of

restaurants taking place in September and October 2007.  A two-month period does not amount

to a "substantial period of time" and cannot establish close-ended continuity.  *See Northwestern*

*Bell*, 492 U.S. at 242 (holding that a *sixteen*-month period of racketeering activity insufficient

length of time to establish closed-ended continuity).

### b.    The Amended Complaint Does Not Adequately Allege Violations Of The Hobbs Act

Wild Edibles also fails to demonstrate that it has adequately alleged any RICO

predicate acts because there are no well-pleaded allegations that the Advocacy Defendants

sought to deprive Wild Edibles of "property" within the meaning of the Hobbs Act.  A necessary

element of the Hobbs Act is that the alleged extortionists *obtain* something of value from the

plaintiff – something quantifiable enough for the Advocacy Defendants to be able to "exercise,

transfer, or sell" it.  *See Scheidler v. NOW*, 537 U.S. 393, 405 (2003).  Wild Edibles' entire

Hobbs Act claim boils down to an allegation that the Advocacy Defendants, by their conduct,

attempted to "extort" Wild Edibles into signing a collective bargaining agreement with the IWW

to benefit third-party employees of Wild Edibles.  Response Br. at 3.

Even accepting Wild Edibles' theory, however, neither of the Advocacy

Defendants is alleged to have "obtained" anything of value from Wild Edibles; it would be the

IWW – not the Advocacy Defendants – that would benefit from the collective bargaining

agreement.  This allegation is insufficient to sustain a Hobbs Act violation against the Advocacy

Defendants.  *See Scheidler*, 537 U.S. at 405 ("[D]efendants' acts of interference with and

---

[3]    In its brief, Wild Edibles makes no attempt to argue that the Amended Complaint adequately pleads "open-ended continuity," and therefore concedes that it does not.

eventual destruction of plaintiffs' business "did not constitute extortion because [defendants] did not 'obtain' [plaintiffs'] property. . . . [Defendants] neither pursued nor received 'something of value from' [plaintiffs] that they could exercise, transfer, or sell."); *see also Advance Relocation & Storage Co. v. Local 814, Int'l Brotherhood of Teamsters, AFL-CIO*, No. 03-CV-4475, 2005 WL 665119, at *6-7 (E.D.N.Y. Mar. 22, 2005) (dismissing RICO charges against defendants that, while allegedly part of conspiracy to force plaintiff to enter into a collective bargaining agreement with co-defendant union, "did not seek or receive any benefit from the [plaintiff], an essential component of extortion under *Scheidler*").

For the first time in its opposition brief, Wild Edibles contends that the Advocacy Defendants have committed predicate acts other than violations of the Hobbs Act, such as wire fraud (which at one point Wild Edibles mistakenly refers to as mail fraud). *See* Response Br. at 10. No such allegation, however, appears in the Amended Complaint. Moreover, even assuming the Amended Complaint sought to plead a wire fraud violation as a RICO predicate act, any such claim would be patently deficient. Wild Edibles does not allege a scheme or artifice to defraud by the Advocacy Defendants. *See* 18 U.S.C. § 1343. Wild Edibles' brief asserts only that the Advocacy Defendants have purportedly "published" unspecified "fraudulent wire communications" on the internet. Response Br. at 10. The brief fails to specify what communications were made, why they were false, or how anyone was induced to rely on them. *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) (reliance on misrepresentations necessary to establish a predicate act of wire fraud); Fed. R. Civ. P. 9(b).

### 2. Wild Edibles Has Failed Adequately To Plead The Existence Of Either The "Extortion Enterprise" Or The "IWW Enterprise"

Wild Edibles also fails to demonstrate that it has properly pleaded the existence of a RICO "enterprise." The Amended Complaint alleged two purported RICO enterprises, the

"Extortion Enterprise" and the "IWW Enterprise," but did provide any information about the alleged enterprises' hierarchy, organization, or activities. In the Response Brief, Wild Edibles simply asserts that "the identities of the two enterprises in question are quite clear." Response Br. at 3. "One enterprise," the brief contends – without specifying which – "is composed of the three Defendants and those acting on their behalf," whoever those people may be. *Id.* The second, unnamed enterprise "is made up of the two moving Defendants and those acting on their behalf." *Id.* Because the Amended Complaint does not contain "solid information regarding the hierarchy, organization, and activities of [the] alleged association-in-fact enterprise," *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal quotation marks omitted), the Amended Complaint fails to plead a RICO enterprise.

### 3.    Wild Edibles Has Failed To Allege The Requisite Impact On Interstate Commerce

The Amended Complaint states only that the alleged enterprises "engage[d] in" unspecified "activities that affected . . . interstate commerce." Am. Compl. ¶ 39; *see also id.* ¶ 40. As explained in the Opening Brief, this bare statement is insufficient to plead the required nexus to interstate commerce. *See* Opening Brief at 17. In response, Wild Edibles argues that "the effect upon interstate commerce is obvious given the nature of Wild Edibles' business" – that is, Wild Edibles "trucks goods between states." Response Br. at 11. Once again, the Amended Complaint does not contain this allegation or anything like it. In any event, Wild Edibles' argument misses the mark. It is not the effect of Wild Edibles' business on interstate commerce that counts; it is the effect on interstate commerce *of the RICO Enterprise* that must be pleaded. *See Tavakoli-Azar v. Crescent Mgmt., Inc.*, No. 97 Civ. 0696, 1998 WL 426733, at *4 (S.D.N.Y. July 28, 1998) ("The Court will dismiss [a] RICO claim if plaintiffs fail to specify how *the enterprise* alleged affects interstate commerce." (emphasis added)).

B.    **Wild Edibles Has Failed To Adequately Plead The Existence Of A RICO Conspiracy Under § 1962(d)**

Wild Edibles' sole attempt to address conspiracy in its brief is to state that "[t]ogether, Gross and the other IWW leaders, such as James Crutchfield, Billy Randle, Stephanie Brasile, etc. conspired together to form the above described 'end around' the restrictions imposed by the National Labor Relations Act." Response Br. at 3. This argument repeats the error of the Amended Complaint by simply stating as fact the conclusory allegation that these people "conspired together." This bare statement of names (that at any rate do not appear in the Amended Complaint) is insufficient to state a claim for RICO conspiracy. *See Naso v. Park*, 850 F. Supp. 264, 275 (S.D.N.Y. 1994) (complaint must allege that "defendants consciously agreed to commit predicate acts with knowledge of the scope of the enterprise and intent to further its affairs"); *Connolly v. Havens*, 763 F. Supp. 6, 14 (S.D.N.Y. 1991) (complaint must allege that defendants "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses" (internal quotation marks omitted)). Moreover, the Amended Complaint makes no mention of any conduct by the Advocacy Defendants attempting to achieve an "end [run] around" the NLRA, and Wild Edibles should not be permitted to effectively amended its pleading by making such an argument in its brief. *See Fadem*, 352 F. Supp. 2d at 516; *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d at 432; *Lazaro*, 54 F. Supp. 2d at 184.

IV.    **WILD EDIBLES HAS FAILED TO ALLEGE A CLAIM PURSUANT TO SECTION 303 OF THE LMRA**

A.    **Wild Edibles' Allegations That Daniel Gross Is An Agent Of IWW And Brandworkers Are Insufficient To Subject Him To Section 303 Liability**

The Amended Complaint sought to plead a Section 303 claim against Daniel Gross on the ground that he was an "officer, director, employee or agent of [Brandworkers] and

an organizer, officer or agent of IWW." Am. Compl. ¶ 8.[4]  Wild Edibles now concedes in its

Response Brief that "an agent of a labor organization is not liable for monetary judgment under §

303 of the Labor Management Relations Act."  Response Br. at 1; *see also id*. at 2 ("Gross may

not be liable under § 303 as an agent of a labor organization").

    In an effort to resuscitate its Section 303 claim against Mr. Gross, however, Wild

Edibles attempts to advance two new theories of liability, neither of which is anywhere alleged in

the Amended Complaint:  (i) that Mr. Gross can be held liable under Section 303 because

Brandworkers is not a natural person and (ii) that Mr. Gross can be held liable under Section 303

by virtue of the application of federal common law.  *See* Response Br. at 7.  Even assuming these

theories were supported by factual allegations in the Amended Complaint, neither theory is

legally colorable.

    Wild Edibles' speculation that "it appears that Gross may simply 'be'

[Brandworkers]," Response Br. at 7, is contradicted by the allegations of the Amended

Complaint which pleads that Brandworkers is an independent entity and contains no allegations

that Mr. Gross is the alter ego of that entity.   *See* Am. Compl. ¶ 7 ("Defendant Brandworkers

International ("BWI") is an unincorporated organization acting as a labor organization as defined

in Section 2(5) of the Act, and/or as the agent of and for Defendant IWW.").  Nor does Wild

Edibles cite to any cases in which a court has ever subjected an individual to Section 303 liability

on the ground that the individual is the alter ego of the labor organization.

    Moreover, Wild Edibles' theory is inherently flawed.  All labor organizations, as

entities, necessarily act through individuals.  As Wild Edibles acknowledges, and as numerous

courts have held, an agent acting on behalf of a labor organization is not subject to Section 303

---

[4]    Wild Edibles appears to have abandoned its claim that Daniel Gross is an agent of IWW, as
reference to IWW is markedly absent from this portion of the Response Brief.

liability.  *See* Response Br. at 1; *see also Mario & DiBono Plastering Co. v. Metallic Lathers Union of N.Y. & Vicinity*, No. 75-4075, 1976 WL 1619, at *1 (S.D.N.Y. Mar. 8, 1976) ("§ 303 only authorizes recovery of damages for unfair labor practices against unions and not their agents.").

      Wild Edibles' second theory, that Mr. Gross should be held liable under federal common law for the "subterfuge he has perpetrated," Response Br. at 7, also lacks merit.  To begin with, Wild Edibles concedes in its Response Brief that the Amended Complaint does not adequately allege any factual basis to subject Gross to liability under this theory.  *See id.* (stating that this claim "would require an additional amendment of the Amended Complaint").  In any event, Wild Edibles cites to no persuasive authority that federal common law enables this Court to amend an act of Congress and to expand the reach of Section 303 to include not just labor organizations, but also individuals whom are otherwise explicitly excluded from liability under the statute.   The cases cited by Wild Edibles, *Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union Local 680, International Brotherhood of Teamsters, AFL-CIO*, 956 F. Supp. 1190, 1198 (D.N.J. 1997); *Kerry Coal Co. v. United Mine Workers of Am.*, 637 F.2d 957, 965 (3d Cir. 1981); and *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre*, 647 F.2d 372, 377 (3d Cir. 1981), do not suggest otherwise.[5]

      For the reasons discussed above, Wild Edibles' Section 303 claim should be dismissed with prejudice.[6]

---

[5]     In *Farmland Dairies, Inc.*, the court dismissed the complaint against individual defendants under the LMRA.  In *Kerry Coal*, the court merely held that pendant jurisdiction could be sustained base on *previously dismissed* federal common-law claims.  *See Kerry Coal*, 637 F.2d at 965.  *Wilkes-Barre Publishing Co.* held only that  individuals may be subject to liability for contractual interference and did not address liability under the Labor Laws.

[6]     As of the date this Reply Brief was filed, Wild Edibles had still not served defendant IWW, despite this Court's request for Wild Edibles to do so.  *See* Exhibit D to the Schriver Affidavit at 9 ("The

**B.    Wild Edibles Does Not Sufficiently Allege That Brandworkers International Is A "Labor Organization" Under The LMRA**

Wild Edibles does not dispute that, prior to serving its Amended Complaint, its counsel previously advised this Court on three separate occasions that Brandworkers was not a labor organization within the meaning of Section 303.[7]  Wild Edibles also does not dispute that the Amended Complaint deficiently pleads Brandworkers' alleged status as a labor organization because Amended Complaint fails to allege that Brandworkers engaged in a regular pattern of representing employees before employers, an essential element under Section 303.  *See* Opening Br. at 21-22 (citing *Rest. Opportunities Center of N.Y.*, Case No. 2-CP-1067, General Counsel Advice Memorandum, Nov. 30, 2006, available at http://www.nlrb.gov/ shared_files/Advice%20Memos/2006/2-CP-10067.htm (concluding that an organization is not a labor organization where its activities are limited to "social advocacy, legal services, and job-support services for restaurant workers")).

Instead, Wild Edibles argues that settlement discussions in this very lawsuit evidence that Brandworkers is a labor organization under Section 303.  *See* Response Br. at 6 ("Gross, purportedly on behalf of [Brandworkers], spoke and repeatedly thereafter spoke demanding union recognition and terms and conditions of employment. . . .  Consequently, [Brandworkers] is a labor organization.").  At the outset, Wild Edibles' reliance on settlement discussions occurring after the filing of the Amended Complaint cannot save its factually deficient pleading.  *See* Section I, *supra*.  Moreover, Wild Edibles fails to articulate the legal basis for its reliance on settlement discussions in the face of Federal Rule of Evidence 408,

---

complaint is dismissed with leave to replead . . . .  And at the same time to join the proper party as you determine whether they are necessary or not.").

[7]     *See* Exhibit D to the Schriver Affidavit at 7 ("[W]e did not include IWW, because ***Brandworkers International is admittedly not a labor organization***." (emphasis added)).

which provides that settlement discussions are "not admissible on behalf of any party when offered to prove liability for, invalidity of, or amount of a claim." Fed. R. Evid. 408(a). Here, Wild Edibles concedes that it is offering the parties' settlement negotiations to disprove any claim "that Gross and or BWI is not either the agent of or are themselves, a labor organization." Response Br. at 7 n.3. This is precisely what Rule 408 prohibits.

Even if the Court were to consider Wild Edibles' assertions regarding the parties' purported settlement discussions, they would not save its pleading. To adequately plead an organization's status as a labor organization, ***the complaint*** must allege a pattern or practice of representing employees before employers. *See, e.g.*, *NLRB v. Peninsula Gen. Hosp. Med. Center*, 36 F.3d 1262, 1263 (4th Cir. 1994) (holding employee organization was not "labor organization" because it did not actually engage in "pattern or practice" of making proposals to which employer responded). The Amended Complaint does not allege that Brandworkers engaged in any such pattern or practice of representing employees before employers, and the alleged settlement discussions between the parties in this lawsuit cannot be characterized as a negotiation by Brandworkers on behalf of employees who are separately represented by their own counsel in their own suit against Wild Edibles.

C.    **Wild Edibles' Failure to Pleading of Secondary Boycott Activity, Not Addressed In Its Response Brief, Warrants Dismissal**

Even if the Court were to accept Wild Edibles' conclusory allegation that Brandworkers is a "labor organizations [sic]" within the meaning of Section 2(5) of the NLRA, the Amended Complaint should still be dismissed for failure to allege that Brandworkers engaged in secondary boycott activities. *See, e.g., NLRB v. Fruit & Vegetable Packers Local 760*, 377 U.S. 58, 70 (1964) (holding a union's secondary picketing of retail stores to persuade customers to cease buying the product of a primary employer is not within the scope of picketing

- 13 -

condemned as an unfair labor practice) [hereinafter *Tree Fruits*]; *Big Apple Supermarkets, Inc. v. Dutto*, 237 F. Supp. 774, 778 (E.D.N.Y. 1965) (dismissing secondary boycott claim where "[t]he conduct set forth in the complaint is the same type of picketing which was present in [*Tree Fruits*]."). Wild Edibles' Response Brief nowhere addresses this argument. This pleading deficiency, among the others addressed above, warrants dismissal of the Amended Complaint with prejudice.

## V.    WILD EDIBLES' CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS SHOULD BE DISMISSED[8]

Wild Edibles erroneously contends that it has adequately pleaded a claim for tortious interference because the Advocacy Defendants allegedly used the "illegal means" of "extorting Wild Edibles' purchasers" and "continuing picketing long after the 30-day period for recognitional picketing had lapsed." Response Br. at 11. As demonstrated above, the Amended Complaint does not, as a matter of law, allege that the Advocacy Defendants engaged in a Hobbs Act violation. Nor does the Amended Complaint contain any allegation whatsoever of a purported violation of the 30-day period for "recognitional picketing." And even if such an allegation did exist in the Amended Complaint, Wild Edibles fails to describe how merely picketing beyond an allowable time period can constitute a "crime or independent tort" under New York law, as is required to state a claim for tortious interference with prospective business relations. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) ("Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations."). Wild Edibles has therefore failed to state a claim for tortious interference with prospective business relations.

---

[8]    Wild Edibles does not dispute that this Court need not reach the issues of whether the Amended Complaint adequately states a claim for tortious interference with prospective business relations if the Court dismisses Wild Edibles' federal law claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Defendants

Brandworkers International and Daniel Gross with prejudice.

Dated: New York, New York
   July 11, 2008

Respectfully submitted,

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP


By:  /s/ Thomas A. Arena
   Thomas A. Arena (TA-4613)
   Robert R. Schriver (RS-6924)
   Elizabeth M. Virga (EV-1125)
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000


URBAN JUSTICE CENTER

By:  /s/ David A. Colodny
   David A. Colodny (DC-4234)
123 William Street, 16th Floor
New York, NY  10038
(646) 602-5600

*Co-counsel for Defendants Brandworkers*
*International and Daniel Gross*