```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
WILD EDIBLES INC.,                  :
                                    :
              Plaintiff,            :    **Opinion and Order**
                                    :
         -against-                  :    07 Civ. 9225 (LLS)
                                    :
INDUSTRIAL WORKERS OF THE WORLD     :
LOCAL 460/640, BRANDWORKERS         :
INTERNATIONAL, and DANIEL GROSS,    :
                                    :
              Defendants.           :
- - - - - - - - - - - - - - - - - -X
```

In its Amended Complaint filed April 14, 2008, plaintiff Wild Edibles Inc. sues defendants Industrial Workers of the World Local 460/640 ("IWW")[1], Brandworkers International ("BWI"), and their officer or agent, Daniel Gross, alleging violations of Sections 1962(c) and (d) of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 ("LMRA"), and Section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4) ("NLRA"), and asserting a state law claim of tortious interference with prospective business relations.

BWI and Gross move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. The issues raised by the motion are disposed of as follows.

---

[1] IWW has apparently not been served (see BWI and Gross' Reply 11 n.6), has not appeared, and is treated as a non-party for purposes of this decision.

1.

Wild Edibles' claims alleging violations of RICO §§ 1962(c) and (d) are dismissed, with leave to replead.

A.

RICO § 1962(c) states that "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."

Wild Edibles complains that defendants, in violation of that provision, compelled restaurants to enter into agreements to stop purchasing Wild Edibles' seafood products in return for which defendants would cease any protest activity near their establishments, such as threatening the restaurants with union trouble, strikes, blocking their entrances, picketing and other coercive activities. See Amend. Compl. ¶¶ 10-13, 35, 38.

The Amended Complaint does not sufficiently allege facts establishing a RICO "enterprise." It states:

> The Defendants are a group of persons associated together for the common purpose of carrying out the illegal extortion schemes described in this complaint. As a result of the forgoing, the Defendants constitute an association-in-fact "enterprise" within the meaning

>of 18 U.S.C. §1961(4) (hereinafter referred to as the "Extortion Enterprise"). . . .
>
>IWW and BWI together constitute an "enterprise" within the meaning of 18 U.S.C. §1961(4) (hereinafter referred to as the "IWW Enterprise"), which enterprise engages in, and the activities of which, affect interstate commerce.

Amend. Compl. ¶¶ 33, 40.

To establish liability under Section 1962(c) requires "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). The RICO "'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981). When, as here, the alleged enterprise is a "group of individuals associated in fact although not a legal entity", RICO § 1961(4), the RICO claim requires proof that the conspirators formed and organized a separate entity (whether formal or informal) on whose behalf they acted; it is not enough if they merely acted together to commit the wrong. The RICO claim must provide "solid information regarding the hierarchy, organization, and activities of the alleged enterprise, from which we could fairly conclude that its members functioned as a unit." City of New York v. Smokes-Spirits.com, Inc., Nos. 06-1665-cv(L), 06-1693-

cv(CON), 06-1694-cv(CON), 06-1695-cv(CON), --- F.3d ----, 2008 WL 4058373, at *17 (2d Cir. Sept. 2, 2008)(quotation marks omitted), quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004). The "conclusory naming of a string of entities does not adequately allege an enterprise." Satinwood, 385 F.3d at 175 (quotation marks omitted), quoting and citing cases. Lack of proof of such an independently existing separate enterprise dooms a RICO claim. As recently observed by the Second Circuit:

> In practice, the dual requirements of (1) distinctness and (2) the proof needed to demonstrate an association-in-fact, work in tandem to weed out claims dressed up as RICO violations but which are not in fact. Specifically, the distinctness doctrine requires a plaintiff to demonstrate that the RICO person is legally separate from the RICO enterprise, while the association-in-fact requirements help ensure that distinctness is not achieved by simply tacking on entities to the enterprise which do not in fact operate as a "continuing unit" or share a "common purpose."

Smokes-Spirits.com, --- F.3d ----, 2008 WL 4058373, at *13.

The facts alleged in the Amended Complaint show labor organizers using a secondary boycott to compel union recognition, nothing more.

B.

Another reason Wild Edibles cannot sustain its Section 1962(c) claims is that the charged acts did not continue long enough to demonstrate the required "pattern of racketeering activity." Disregarding Wild Edibles' conclusory assertions, the only specific predicate acts of racketeering activity alleged[2] in the Amended Complaint occurred during September and October 2007. That period of supposed racketeering activity is too short to establish closed-ended continuity. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184-85 (2d Cir. 2008)(predicate acts occurring over sixteen-month period insufficient to establish closed-ended continuity, which requires a showing of "'a series of related predicates extending over a substantial period of time'", quoting and citing cases); Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999)("the predicate acts that the Windsor Defendants committed spanned less than one year—a period of insufficient length to demonstrate closed-ended continuity under our precedents"); GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 467-69 (2d Cir. 1995)(predicates occurring over eleven-month period insufficient).

---

[2] The Court assumes for present purposes that threatening the restaurants with economic injury to compel them to enter into a boycott of Wild Edibles' products might constitute extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, which BWI and Gross dispute.

C.

Nor does the Amended Complaint sufficiently plead "open-ended" continuity, because the finite purpose of defendants' alleged scheme — to "put Plaintiff out of business . . . unless Plaintiff recognizes the IWW as the representative of its employees and agrees to the IWW terms in a collective bargaining agreement" (Amend. Compl. ¶ 31) — is inherently short-lived. See <u>Linens of Europe, Inc. v. Best Mfg., Inc.</u>, No. 03 Civ. 9612 (GEL), 2004 WL 2071689, at *17 (S.D.N.Y. Sept. 16, 2004)(complaint "fails to allege open-ended continuity because the object of the alleged conspiracy—to destroy LOE, drive it out of the Relevant Market or force it to sell itself to a member of the Cartel ([Compl.] ¶ 167)—is inherently finite", citing cases); <u>Vicom, Inc. v. Harbridge Merchant Services, Inc.</u>, 20 F.3d 771, 782 (7th Cir. 1994)("schemes which have a clear and terminable goal have a natural ending point" and "therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity").

D.

It follows that Wild Edibles' claims alleging violations of RICO § 1962(d), by conspiring to perpetrate the substantive violations, also must be dismissed. See Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 462 (S.D.N.Y. 2008)("There can be no RICO conspiracy without a substantive RICO violation."), citing Satinwood, 385 F.3d at 182 ("Finally, because Plaintiffs did not adequately allege a substantive violation of RICO in Count Five on the part of either Sohrab or Afsar, the District Court properly dismissed Count Six, which alleged a RICO conspiracy in violation of 18 U.S.C. § 1962(d).").

2.

Wild Edibles' claims that BWI and Gross are liable under LMRA § 303 for damages caused by their participation in secondary picketing and boycott activities prohibited by NLRA § 8(b)(4) are also dismissed, with leave to replead.

LMRA § 303 states:

**(a)** It shall be unlawful . . . for any labor organization to engage in any activity or conduct defined as an unfair labor practice in [NLRA § 8(b)(4)].

**(b)** Whoever shall be injured in his business or property by reason o[f] any violation of subsection

(a) of this section may sue therefor . . . and shall recover the damages by him sustained and the cost of the suit.

NLRA § 8(b)(4) defines it as an unfair labor practice for a labor organization or its agents to engage in secondary picketing and boycott activities, i.e., to "threaten, coerce, or restrain" a person not a party to a labor dispute, where an object thereof is forcing or requiring that neutral party to cease doing business with any person involved in the labor dispute. See id. § 8(b)(4)(ii)(B).

Wild Edibles apparently bases its LMRA § 303 claims against BWI and Gross on its allegations that BWI acted "as a labor organization as defined in Section 2(5) of the [NLRA, 29 U.S.C. § 152(5)] and/or as the agent of and for Defendant IWW" (Amend. Compl. ¶ 7), and that Gross was an agent or officer of both IWW and BWI (id. ¶ 8).

But LMRA § 303 does not provide a remedy against agents of labor unions: it "only authorizes recovery of damages for unfair labor practices against unions", Mario & DiBono Plastering Co., Inc. v. Lathers, Local 46, No. 75-4075, 1976 WL 1619, at *1 (S.D.N.Y. Mar. 8, 1976), as Wild readily concedes. See Pl.' Opp. 1: "Defendants Brandworkers International ('BWI') and Daniel Gross ('Gross') are correct that an agent of a labor

organizations [sic] is not liable for a monetary judgment under §303 of the Labor Management Relations Act."

The Amended Complaint does not allege facts showing that BWI is a "labor organization" as defined by NLRA § 2(5). To show that an organization is a labor organization within the meaning of that statute, a plaintiff must allege that it "existed to deal with management concerning labor relations on behalf of employees." General Foods Corp., 231 N.L.R.B. 1232, 1234-35 (1977)(teams of employees were not labor organizations under NLRA § 2(5) because there was "no evidence that [each] team as such ever acted as an agent on behalf of any irate employee to assist him in pressing his case"), cited with approval in NLRB v. Streamway Div. of Scott & Fetzer Co., 691 F.2d 288, 293-95 (6th Cir. 1982). The Amended Complaint does not allege facts showing that BWI as a principal represented employees of Wild Edibles in dealings with Wild Edibles over labor matters. It makes a conclusory statement to that effect, but limits its scope by explicitly characterizing those activities as done by "the agent":

> BWI and Gross have acted as a labor organization with regard to Plaintiff with regard to the IWW union member employee grievances, the IWW labor disputes, wages, rates of pay, hours of employment, or conditions of work, and at all times as the agent of and for Defendant IWW to coerce or defraud Plaintiff into entering into a collective bargaining agreement with Defendant IWW.

Amend. Compl. ¶ 30 (emphasis added).

While Wild Edibles' counsel proffers an affidavit purporting to furnish much of the missing factual material, that does not take the place of allegations in the Amended Complaint. See Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000)("a district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss")(brackets and quotation marks omitted), quoting and citing cases.

3.

All of the federal claims against BWI and Gross having been dismissed well in advance of trial, and the parties not being of diverse citizenship, the Court declines to exercise supplemental jurisdiction over Wild Edibles' state law claims that BWI and Gross tortiously interfered with prospective business relations between Wild Edibles and the restaurants. Pursuant to 28 U.S.C. § 1367(c)(3), "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." See Marcus v. AT & T Corp., 138

F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, the state law claims are dismissed without prejudice.

CONCLUSION

The motion to dismiss the Amended Complaint is granted. Wild Edibles' claims alleging RICO violations and its claims that BWI and Gross are liable for violations of LMRA § 303 are dismissed, with leave to replead, and the remaining state law claims against BWI and Gross are dismissed without prejudice.

So Ordered.

Dated:   New York, New York
         October 8, 2008

*Louis L. Stanton*
LOUIS L. STANTON
U. S. D. J.